547 A.2d 428

**Marlene M. BATEMAN, Administratrix of the Estate of William J. Bateman, Jr., Appellant,**

v.

**MOTORISTS MUTUAL INSURANCE CO., Appellee.**

Superior Court of Pennsylvania.

Submitted May 5, 1988.

Filed Sept. 6, 1988.

David M. McQuiston, Pittsburgh, for appellee.

Before CIRILLO, President Judge, and BECK and POPOVICH, JJ.

POPOVICH, Judge:

This is an appeal from the order of the Court of Common Pleas of Allegheny County affirming an arbitration award entered in favor of Motorists Mutual Insurance Company and against the appellant/Marlene M. Bateman, Administratrix of the Estate of William J. Bateman, Jr. We affirm in a case of first impression.

All relevant facts have been stipulated to by the parties and reveal that William J. Bateman, Jr., died as a result of injuries received in a two-car collision on Washington Pike in South Fayette Township on November 19, 1983.

An administratrix was named for the decedent's estate. She initiated suit against the driver of the other vehicle involved in the accident (Ronald Lenhart) on negligence grounds, the owners of a tavern (Ronald and John Demsher, t/d/b/a "The Wheel") premised upon the Dram Shop Act and the manufacturer of the vehicle (Ford Motor Company) on theories of strict liability and product liability. Thereafter, the administratrix reached a settlement with all three parties and discontinued the wrongful death and survival actions. Settlement consisted of payment of $30,000 by Ford Motor Company, $15,000 from Lenhart and $33,334 was received from the Demshers.[1]

1. The Lenhart payment was the full amount of his automobile insurance policy limit, the Demshers' payment was two-thirds of their

Consistent with the policy of insurance it had with the decedent, Motorists approved all settlements without prejudice to its rights and defenses under the policy limiting its "underinsured" motorist liability to $50,000.[2]

Because the damages incurred were in excess of the total of all settlements ($78,334) and underinsurance coverage ($50,000),[3] the administratrix filed a claim with the insurer to recoup the $50,000 of underinsurance coverage. Motorists refused. In accordance with the insurance policy, the matter was submitted to a three-member board of arbitrators who ruled, two to one, to deny the decedent's estate payment of the monies claimed due. It concluded that the insurance policy, as written, required that the amounts secured by the administratrix through settlement negotiations were to be used as a set-off against the dollar figure provided for under the insurer's limits of its *liability* coverage and not the dollar amount claimed due for *damages* by the estate. In other words, because the settlement figure ($78,334) exceeded the liability limitation to which the insurer was exposed ($50,000), this dispensed with the insurer having to pay the insured's estate anything.

The estate's contention that the settlement figure was to be set-off against the total amount of damages sought to be recovered vis-a-vis the insurer's limits of liability, or, at the very most, only tortfeasor/Lenhart's payment to the estate of $15,000 should be utilized as a set-off against the insurer's limits of liability since the Demshers and Ford Motor Company did not qualify as operators of underinsured mo-

policy limit, with the remaining one-third being paid to a passenger in the decedent's vehicle. Ford Motor Company, being self-insured, did not exhaust any policy limits.

2. Provisions relating to "uninsured" motorist coverage are contained in *Part C* of the policy. (RR. 24a–24b) It was only when the policy was amended by endorsement did it then provide for "underinsured" motorist coverage by stating that "when the term uninsured motor vehicle is used in Part C, it shall also include underinsured motor vehicle...." (RR. 31a)

3. The parties have stipulated that the damages sustained by the decedent surpass the $128,334 mark, *i.e.*, an amount in excess of the sums received in settlement plus the underinsured motorist liability limits of the policy which the administratrix has attempted to recover.

tor vehicles, proved to be unpersuasive. On appeal to Common Pleas Court, the award of the arbitrators was affirmed and judgment was directed to be entered by order of court in favor of Motorists. This appeal followed.

██ The first issue raised for our consideration is framed by the administratrix at page 8 of her brief and reads:

The arbitrators and the court below erred as a matter of law in applying the offset clause contained in Motorists' policy against the limits of its liability for underinsured motorists coverage as opposed to the total amount of damages suffered by the Administratrix.

The "offset" clause appears in Part C of the policy of insurance and purports to limit the insurer's liability for uninsured, and by extension reproduced at 31a of the record, underinsured motorist benefits. It reads in pertinent part:

The limit of liability shown in the Declaration for "each person" for Uninsured[/Underinsured] Motorists Coverage is our maximum limit of liability for all damages for bodily injury sustained by any one person in any one auto accident. Subject to this limit for "each person", the limit of liability shown in the Declaration for "each accident" for Uninsured[/Underinsured] Motorist Coverage is our maximum limit of liability for all damages for bodily injury resulting from any one auto accident. This is the most we will pay regardless of the number of:

1. Covered persons;

2. Claims made;

3. Vehicles or premiums shown in the Declarations; or

4. Vehicles involved in the accident.

*Any amounts otherwise payable for damages under this coverage shall be reduced by all sums:*

1. *Paid because of the bodily injury by or on behalf of persons or organizations who may be legally responsible.* This includes all sums paid under Part A; and

2.  Paid because of the bodily injury under any of the following or similar law:
   a.  Worker's Compensation Law;  or
   b.  Disability Benefits Law.

Any payment under this coverage will reduce any amount that person is entitled to recover for the same damages under Part A.

(Emphasis added)

It was the conclusion of two of the arbitrators (Gushard and McLean) below, affirmed by the Court of Common Pleas, that the "offset" clause verbiage ("any amounts otherwise payable for damages under this coverage shall be reduced....") applied to the limit of liability of the policy of insurance.  They so concluded on the strength of *Votedian v. General Accident Fire and Life Assurance Corp.*, 330 Pa.Super. 13, 478 A.2d 1324 (1984), and, more particularly, *Sparler v. Fireman's Insurance Co. of Newark, New Jersey*, 360 Pa.Super. 597, 521 A.2d 433 (1987) (en banc) (Concurring Opinion by Popovich, J.).  We find it only necessary to review our holding in *Sparler*, for the same is controlling on this aspect of the case.

In *Sparler*, the insured was involved in a vehicular accident in which he obtained $25,000 in settlement from a third-part tortfeasor.  Because Sparler's injuries were over $40,000, and his own underinsured motorist coverage policy of insurance stood at $15,000, he instituted suit against his own insurer (Fireman's) to recover the underinsured motorist benefits contained in the Fireman's policy.  As is relevant herein, Sparler's insurance provisions provided in Part 6B:

We will pay damages which a Covered Person is legally entitled to recover from the owner or operator of an (underinsured) motor vehicle because of bodily injury.

(a) Sustained by a Covered Person;  and

(b) Caused by an accident.

Part 6D of the same policy read:

*Any amounts payable under Part 6 shall be reduced* by all sums

(a) paid because of bodily injury by or on behalf of someone who may be liable.

The trial court disallowed the insured recovery of the $15,000 underinsurance benefits on the basis of a general release, which supposedly excluded the insurer from further liability. On appeal, this Court found the general release did not encompass the insurer. Nonetheless, we upheld the trial court's denial of underinsurance benefits on the basis that the underinsurance provisions of the policy of insurance precluded the insured recovery.

In particular, we wrote that:

... Sparler in fact was paid the sum of twenty-five thousand ($25,000.00) dollars by or on behalf of the third party tortfeasor. According to the provision contained in Subdivision D of the policy, the twenty-five thousand ($25,000.00) dollars received by Sparler by or on behalf of the third party tortfeasor must be set off against any amount payable by virtue of the "Uninsured (and Underinsured) Motorist" coverage provided in Part 6 of the policy. When the twenty-five thousand ($25,000.00) dollar recovery is set off against the fifteen thousand ($15,000.00) dollars which Fireman's agreed to pay to Sparler pursuant to Section 6, it becomes evident that Fireman's has no further liability for underinsured motorist coverage.

We conclude, therefore, that Sparler's claim for underinsured motorist coverage has been precluded ... (b)ecause Sparler's third party recovery was in excess of and had to be set off against the underinsured motorist coverage provided by Fireman's policy, the judgment entered in favor of Fireman's was proper and must be affirmed.

360 Pa.Super. at 608, 521 A.2d at 438–39.

Premised upon language at bar in Part C of the policy of insurance, which is similar to that appearing in Part 6D of the policy under scrutiny in *Sparler,* we conclude that the arbitrators were correct in offsetting the settlement figure received by the insured ($73,334) against the limits of the

insurer's liability ($50,000). Therefore, since the former exceeds the latter, the administratrix was not entitled to recover anything from the insurer under the decedent's policy of insurance.

Additionally, giving the language ("Any amounts otherwise payable for damages under this coverage") its ordinary and common sense meaning (*see Standard Venetian Blind Co. v. American Empire Ins. Co.*, 503 Pa. 300, 469 A.2d 563 (1983); *Kleintop v. Kleintop*, 291 Pa.Super. 491, 436 A.2d 223 (1981)), we have no reluctance in holding that the parties' intention to the contract of insurance was that "damages" to be paid thereunder were those within the "coverage" of the policy of insurance. And, because the same were specifically limited on the Declaration Sheet of the policy not to exceed $50,000, the perimeters were set out clearly so that the total damages claimed incurred by an insured would not be the measuring rod against which exposure to liability by the insurer would be gauged. Any other reading of the clause in question would be re-writing the contract, a step which we need not take in the face of an otherwise clear and unambiguous agreement. *See Standard Venetian Blind Co.*, supra.

In the second issue proffered by the administratrix, at page 13 of her brief, she alleges:

> The arbitrators and lower court erred as a matter of law in applying the settlement amounts received by the Administratrix on behalf of Defendant Demsher for Dram Shop Act liability and Defendant Ford Motor Company for products liability to offset Motorists' liability for underinsured motorist coverage.

In particular, it is the appellant's contention that the language in Part C ("Limit of Liability"), allowing the amount otherwise payable for damages by an insurer subject to reduction by all sums paid "by or on behalf of persons or organizations who may be legally responsible" for the bodily injury sustained, should not be read to include non-motorist defendants, *i.e.*, cases involving Dram Shop Act liability or products liability of third party tortfeasors.

There is a paucity of cases dealing specifically with the issue at hand. Nonetheless, we find direction from the case of *Walls v. City of Pittsburgh*, 292 Pa.Super. 18, 438 A.2d 698 (1981).

In *Walls*, the appellee/insured was injured as a result of the actions of an uninsured motorist. She filed a claim with her insurer to recover under her uninsured motorist insurance, while at the same time instituting suit against the City of Pittsburgh for the negligent maintenance of the roadway.

Ms. Walls received an arbitration award in her favor of $10,000, and she signed an agreement in which she promised to hold in trust, for the benefit of the insurer,

> ... any settlement ... recover(ed) against *any organization legally responsible for causing the injury or death on account of which said payment is made* (.)

292 Pa.Super. at 22, 436 A.2d at 700 (Emphasis in original).

Walls subsequently settled with the City of Pittsburgh for $50,000, and the insurer sought to intervene. The insurer claimed that since the City was "a person or organization legally responsible for causing the injury on account of which" the insurer had paid Walls, it was due the monies paid to her. The lower court disagreed. Before a panel of this Court, although remanding to allow the insurer to allege (as a condition precedent to recovery) that the sum the insured obtained from the insurer and from other persons legally responsible for the injury exceeded the insured's loss, we did make some statements relevant to the case instantly; to-wit:

> The lower court's conclusion that the words "any person or organization legally responsible for causing injury" include only the uninsured motorist is incorrect; accordingly, we expressly disapprove its holding.

292 Pa.Super at 23, 436 A.2d at 701 (Footnote omitted).

The contractual provision appearing in Part C, allowing the insurer recoupment of the monies paid to its insured, is the equivalent of the precept of "subrogation" which pervades the insurance field. In fact, in the "Conditions"

section of the policy of insurance, reproduced at 15a–16a of the appellant's brief, provisions for subrogation, indemnification and non-duplication of benefits are recited.

Consistent with the insurer's right to credit payments as outlined above, we find that *Walls* and the unequivocal language outlined in Part C, regarding the reduction of amounts due from the insurer because "of persons or organizations who may be legally responsible" to the insured, are correct and we have no reservations in echoing the sentiments of the court below.

Specifically, we read the language under examination here to embrace the Demshers and Ford Motor Company, and any payments made by either to the insured, for each is now held to be a "person or organization," respectively, who has admitted responsibility, at least in part, for the accident leading to Bateman's death.

Thus, the insurer is allowed to offset the amount received by the administratix, upon behalf of the insured/decedent, from the Demshers and Ford Motor Company against the limits of liability.

Finding no fault with the actions of the court below, we will do the same and affirm the arbitrators' award. Order is affirmed.