556 A.2d 391

**Edward L. GEISLER and Edward J. Geisler**

v.

**MOTORISTS MUTUAL INSURANCE COMPANY, Appellant.**

Superior Court of Pennsylvania.

Argued Sept. 15, 1988.

Filed March 16, 1989.

624

Ronald J. Rademacher, Pittsburgh, for appellant.

Robert N. Peirce, Jr., Pittsburgh, for appellees.

Before CAVANAUGH, TAMILIA and HOFFMAN, JJ.

HOFFMAN, Judge:

This appeal is from the judgment resulting from the trial court's orders denying appellant's petition to correct, modify, or vacate the arbitrators' award, and confirming the arbitration award. Appellant contends that the trial court erred in confirming the award because the arbitration panel committed errors of law in (1) allowing appellees to stack coverages under their insurance policy; and (2) improperly applying the "set off" provision of the policy. For the reasons that follow, we hold that the trial court and arbitrators properly allowed appellees to stack coverages, but that, under the set off provision, the award to appellee Edward J. Geisler should have been reduced to $89,413.62. As modified, the judgment is affirmed.

This action arose out of a claim for benefits under a policy of insurance held by appellees. On July 21, 1983, appellee Edward L. Geisler and his son, appellee Edward J. Geisler, suffered injuries as a result of an automobile accident with a car driven by Daniel Schillinger. Appellees

settled their suit against Schillinger, receiving a total of $35,000 from Schillinger's insurer. This amount was the maximum limit of liability coverage under Schillinger's policy. Appellees then filed a claim for uninsured motorist benefits against their own insurer, appellant, Motorists Mutual Insurance Company. Appellant denied the claim and, pursuant to the terms of the policy, the matter proceeded to arbitration.

The arbitrators heard evidence and, on May 26, 1987 entered a $160,000 award in favor of appellees, with $60,000 payable to appellee Edward L. Geisler and $100,000 payable to appellee Edward J. Geisler. Thereafter, appellees filed a petition to confirm the arbitration award, and appellant filed a petition to correct, modify or vacate the award. On August 5, 1987, the court below denied the petition to correct, modify, or vacate the award, and entered an order confirming the arbitration award. On August 18, 1987, judgment was entered on the trial court order, and this timely appeal followed.

## I.

█ We begin with our standard of review. The insurance policy issued by appellant provided that if either party demanded arbitration to resolve a dispute involving uninsured motorist coverage, the "[a]rbitration shall be conducted in accordance with the provisions of the Pennsylvania Arbitration Act of 1927." *See* Insurance Agreement Endorsement/Amendment, R.R. at 11a. The Arbitration Act of 1927 was repealed and replaced by the Act of 1980 (codified at 42 Pa.C.S.A. §§ 7301–7362). We note, however, that the Historical Note to the 1980 Act provides that agreements "which expressly provid[e] for arbitration pursuant to the former provisions of the Act of April 25, 1927 ..., relating to statutory arbitration" shall be governed by the "contrary to law" standard of review contained in 42 Pa. C.S.A. § 7302(d)(2). Act of 1980, Oct. 5, P.L. 693, No. 142 (codified as the Historical Note to 42 Pa. C.S.A.

§ 7302(d)(2)). Thus, under § 7302(d)(2), a reviewing court may,

> modify or correct the award where the award is contrary to law and is such that had it been a verdict of a jury the court would have entered a different judgment or judgment notwithstanding the verdict.

*Id. See also Selected Risks Ins. Co. v. Thompson,* 363 Pa.Super. 34, 37, 525 A.2d 411, 412 (1987), *rev'd in part and aff'd in part on other grounds,* 520 Pa. 130, 552 A.2d 1382 (1989); *Ragin v. Royal Globe Ins. Co.,* 315 Pa.Super. 179, 184–85, 461 A.2d 856, 858–59 (1983).

## II.

We turn now to the merits of appellant's underlying contentions. The principles governing interpretation of a policy of insurance are well-settled. The interpretation of an insurance policy is a question of law that is properly reviewable by the court. *Winters v. Erie Ins. Group,* 367 Pa.Super. 253, 257, 532 A.2d 885, 887 (1987). *See also Utica Mut. Ins. Co. v. Contrisciane,* 504 Pa. 328, 334, 473 A.2d 1005, 1008 (1984); *Timbrook v. Foremost Ins. Co.,* 324 Pa.Super. 384, 388, 471 A.2d 891, 893 (1984). In construing the policy, we are mindful that "[p]olicy clauses providing coverage are interpreted in a manner which affords the greatest possible protection to the insured.... The insured's reasonable expectations are the focal point in reading the contract language." *Winters v. Erie Ins. Group, supra* 367 Pa.Super. at 257–58, 532 A.2d at 887 (citations omitted). Our object, as is true in interpreting any contract,

> is, of course, to ascertain the intent of the parties as manifested by the language of the written instrument.... Where a provision of a policy is ambiguous, the policy provision is to be construed in favor of the insured and against the insurer, the drafter of the agreement.... Where, however, the language of the contract is clear and unambiguous, a court is required to give effect to that language.

*Standard Venetian Blind Co. v. American Empire Ins. Co.*, 503 Pa. 300, 305, 469 A.2d 563, 566 (1983) (citations omitted). *See also Votedian v. General Acc. Fire & Life Assur. Corp.*, 330 Pa.Super. 13, 16–17, 478 A.2d 1324, 1326 (1984). An insurance policy provision is ambiguous only if "reasonably intelligent men on considering it in the context of the entire policy would honestly differ as to its meaning." *Patterson v. Reliance Ins. Cos.*, 332 Pa.Super. 592, 596, 481 A.2d 947, 949 (1984) (citations omitted).

## A.

■ Appellant first contends that the trial court erred in confirming the arbitration award because the arbitration panel committed an error of law in determining that appellees could stack coverages under their automobile insurance policy.[1] The facts related to this claim are as follows. The limit of liability under the insurance policy held by Schillinger was $35,000. The limit of liability for uninsured motorist benefits under appellees' insurance policy, however, was $50,000 per person with a maximum of $100,000 per accident. In addition, the policy provided coverage for two automobiles. Because their injuries exceeded the amount they received in settlement from Schillinger's insurer, and because Schillinger's policy had a lower liability limit than their own policy, appellees filed the present action against their insurer. At the arbitration hearing, the primary issue was whether appellees should be permitted to stack the coverages on their two automobiles. The arbitrators concluded that stacking was appropriate, and thus determined that the applicable policy limits were $100,000 for each appellee.

Appellant's specific argument is that the arbitration panel erred in stacking the coverages because the contract included an exclusionary or "no stacking" clause, which provided

1. Stacking, or the cumulation of insurance coverage, "occurs when the total amount of insurance available to cover all motor vehicles on a policy involving more than one vehicle may be available for an accident involving just one of those vehicles." *Novoseller v. Royal Globe Ins. Co.*, 317 Pa.Super. 217, 220 n. 2, 463 A.2d 1163, 1164 n. 2 (1983) (plurality opinion).

that the insurer's maximum liability was $50,000 for each person and $100,000 for each accident, regardless of the number of covered persons or vehicles. Appellant maintains that Schillinger was an *under*insured and not an *un* insured motorist, and thus the no stacking provision is enforceable. Conversely, appellees argue that the policy at issue here was drafted in such a way that an underinsured motorist such as Schillinger must be *treated* as an uninsured motorist, and thus, under clear Pennsylvania precedent, the no stacking clause is unenforceable.

Pennsylvania courts have indeed treated no stacking provisions in automobile insurance contracts differently, depending on whether uninsured or underinsured benefits are at issue. When the claim is based on *un*insured motorists coverage, no stacking provisions have been held to be invalid, because they are repugnant to the purposes and policies underlying the Uninsured Motorists Act. *See Votedian v. General Acc. Fire & Life Ass. Corp., supra* 330 Pa.Super. at 17, 478 A.2d at 1326. *See also Utica Mut. Ins. Co. v. Contrisciane, supra* 504 Pa. at 337, 473 A.2d at 1010; *State Farm Mut. Auto. Ins. Co. v. Williams,* 481 Pa. 130, 392 A.2d 281 (1978); *Harleysville Mut. Cas. Co. v. Blumling,* 429 Pa. 389, 241 A.2d 112 (1968). When the claim is based on *under*insured motorists coverage, however, no stacking provisions have been held to be valid and enforceable, at least so long as the provision is clearly worded and conspicuously displayed. *Votedian v. General Acc. Fire & Life Ass. Corp., supra* 330 Pa.Super. at 18–19, 478 A.2d at 1327. *See also Haegele v. Pennsylvania Gen'l Ins. Co.,* 330 Pa.Super. 481, 493, 479 A.2d 1005, 1011 (1984). Thus, the resolution of appellant's contention turns on whether the policy coverage at issue here was for uninsured or underinsured motorists.

An examination of the insurance policy drafted by appellant reveals the following. Part C of the original policy provided for uninsured motorists coverage, and both the declaration sheet of the policy and the "quick reference" guide made reference to uninsured motorists coverage. *See*

R.R. at 18a–19a, 2a, 3a. A separate premium was charged for this coverage. There was no provision, either in Part C or any other part of the policy, relating to underinsured motorists coverage.[2] A subsequent amendment to the policy, however, did incorporate a reference to underinsured motor vehicles. The amendment was contained in a special sheet attached to the policy and stated:

POLICY PROVISION AMENDMENTS
\*   \*   \*   \*   \*   \*

PART C—UNINSURED MOTORISTS COVERAGE

1.  When the term uninsured motor vehicle is used in Part C, it shall also include underinsured motor vehicle as defined below.
    "Underinsured motor vehicle" means a land motor vehicle or trailer of any type to which a bodily injury liability bond or policy applies at the time of the accident but its limit for bodily injury liability is less than the limit of liability for this coverage.

R.R. at 25a.[3]

The trial court, agreeing with appellees, concluded that the policy and amendment were drafted in such a way that coverage was extended only for uninsured motorists, but

2.  The insurance policy issued by appellant was in effect from February 13, 1983 to August 13, 1983. At that time, the legislature did not require insurers to provide underinsured motorists coverage. We note, however, that the subsequently enacted Motor Vehicle Responsibility Law, which became effective on October 1, 1984, does require that motor vehicle liability insurance policies contain both uninsured and underinsured motorists coverage. See 75 Pa. C.S.A. § 1731(a).

3.  This Amendment was followed by the no-stacking amendment upon which appellant relies. The no-stacking provision reads:
    3.  When a limit of liability is shown in the Declarations for "each person" and "each accident" the first paragraph of the LIMIT OF LIABILITY provision in Part C is replaced by the following: The limit of liability shown in the Declarations for "each person" for Uninsured Motorists Coverage is our maximum limit of liability for all damages for bodily injury sustained by any one person in any one auto accident. Subject to this limit for "each person", *the limit of liability shown in the Declarations for "each accident" for Uninsured Motorists Coverage is our maximum limit of liability for all damages for bodily injury resulting from any one auto accident. This is the most we will pay regardless of the number of:*

that, under the definition provided, underinsured motorists were to be treated as uninsured motorists. Because it concluded that appellees were seeking uninsured motorists benefits, the court held that the arbitrators did not err in allowing appellees to stack the coverages. In so holding, the court reasoned that,

> Motorists Mutual has created its own dilemma. "Uninsured Motorists" coverage is different than "Underinsured" coverage. Motorists Mutual nonetheless chose to call both coverages "[Un]insured Motorists Coverage" when all that was required was a separate policy provision covering and entitled "Underinsured Motorists Coverage." In this situation the policy must be interpreted against the insurer and given the interpretation most favorable to the insured. *Votedian v. General Accident Fire and Life Assurance Corp.*, 330 Pa.Super. 13, 478 A.2d 1324 (1984). Accordingly, because Motorist Mutual delineated that the term "uninsured motor vehicle" included "underinsured motor vehicle" the policy may be "stacked."

Trial Court Opinion at 4.

We agree with the trial court that the arbitrators did not err in allowing appellees to stack benefits. Appellant, who drafted the policy and amendment, could have specifically separated the underinsured coverage from the uninsured coverage. Instead, appellant elected to have the specific coverage for underinsured motorists subsumed within the general coverage for uninsured motorists. Moreover, the *only* reference to underinsured motorists coverage was in this amendment to the uninsured coverage: it still was not listed on the declaration sheet, no separate premium was charged for it, and even the no-stacking clause in the amendment refers only to the general uninsured coverage and not to underinsured motorists.

1. *Covered persons;*
2. *Claims made;*
3. *Vehicles or premiums shown in the Declarations; or*
4. *Vehicles involved in the accident.*

R.R. at 26a.

As we have noted above, the insured's reasonable expectations are the focal point in interpreting contract language. *See Winters v. Erie Ins. Group, supra.* Here, in light of the contractual structure outlined above, an insured could reasonably have understood the amendment to mean merely that appellant had *expanded* the uninsured motorists coverage to include underinsured motorists. Thus, even though their insurer was not required to provide underinsurance coverage, and even though their insurer could limit underinsurance coverage with a no stacking provision, appellees could reasonably have concluded that, under the peculiar language in *their* policy, if they were injured by an underinsured driver they were entitled to all of the benefits allowed by statute and decisional law to those seeking uninsured benefits, including stacking.[4] We recognize, of course, that the amendment lends itself to a contrary, and equally reasonable interpretation: i.e., because the terms "uninsured" and "underinsured" are separately defined, and obviously refer to different factual situations, the underinsured provision must be treated as a separate and distinct coverage. Because the meaning of the amendment is at best ambiguous, *see Patterson v. Reliance Ins. Cos., supra,* we must construe the provision in favor of the insured and against the insurer. *See Standard Venetian Blind Co. v. American Empire Ins. Co., supra; Votedian v. General Acc. Fire & Life Assur. Corp., supra.* Accordingly, we conclude that the arbitrators did not commit an error of law in determining that appellees were suing for uninsured motorists benefits, and were therefore entitled to stack coverages.

### B.

Appellant next contends that the trial court erred in confirming the arbitration award because the arbitrators

4. We note that the Uninsured Motorist Act provides that,
  Nothing herein contained shall be construed to prevent any insurer from affording the coverage required by this section *under terms and conditions more favorable to its insured than are provided herein.*
40 Pa.S.A. § 2000(f) (emphasis supplied).

incorrectly applied the "set off" provision of the insurance contract in determining the awards due to appellees. The set off clause provides that:

> Any amounts otherwise payable for damages under this coverage shall be reduced by all sums:
>
> 1. Paid because of the bodily injury by or on behalf of persons or organizations who may be legally responsible. . . .

R.R. at 19a. The $35,000 settlement from Schillinger's insurer was specifically apportioned as follows:

$14,413.62 to appellee Edward L. Geisler

10,586.38 to appellee Edward J. Geisler

$10,000.00 annuity for attorney fees

R.R. at 72a. The arbitrators stated that they had deducted the amount that each appellee received from the settlement with Schillinger from the actual value of the injuries he had sustained. Statement of Arbitrators at 2, R.R. at 31a. The issue that we must decide is whether the arbitrators should have offset the settlement amounts from the *policy limits* rather than the actual damages suffered.

This question is controlled by our recent decision in *Bateman v. Motorists Mut. Ins. Co.*, 377 Pa.Super. 400, 547 A.2d 428 (1988). In *Bateman,* the actual damages suffered by the insured exceeded the total of all settlements and underinsurance coverage, and the insured therefore filed a claim with the insurer to recover the underinsured policy limits. The set off clause at issue in *Bateman* was identical to the set off provision here, and, indeed, was contained in an automobile insurance policy issued by the same insurer, Motorists Mutual. We held that, under this provision, the amounts received in settlement must be set off against the limits of the insurer's liability, and not against the total amount of damages suffered by the insured. *See id.,* 377 Pa.Superior Ct. at 404–05, 547 A.2d at 431 (relying on *Sparler v. Fireman's Ins. Co.*, 360 Pa.Super. 597, 521 A.2d 433 (1987) (en banc)).

Applying *Bateman* to the instant case, if the actual damages sustained by either appellee exceeded the policy limits ($100,000), we must conclude that the arbitrators committed an error of law in deducting the settlement amount from the actual damages rather than the policy limits.[5]

## APPELLEE EDWARD L. GEISLER

■ The arbitration panel awarded Edward L. Geisler a total of $60,000. In their statement, the arbitrators explained how they arrived at this figure:

> In rendering an Award in the amount of $60,000.00 against [sic] Plaintiff, Edward L. Geisler against Motorists Mutual Insurance Company, we determined the actual value of the injuries sustained by Edward L. Geisler and deducted payments Edward L. Geisler had already received from Aetna Casualty and Surety Company [Schillinger's insurer] and issued an award in favor of Edward L. Geisler against Motorists Mutual Insurance Company for the balance of the value of the damages, to wit, $60,000.00.

Statement of Arbitrators at 1–2, R.R. at 30a–31a. From this statement, it is apparent that the actual injuries suffered by Edward L. Geisler were substantially less than the $100,000 policy limit. When the insured's injuries are *less* than the policy limits, the insurer, of course, is responsible only for those actual damages minus any applicable set off. Accordingly, the arbitrators did not err in offsetting the settlement amount paid to Edward L. Geisler from the actual value of his injuries.

## APPELLEE EDWARD J. GEISLER

■ The arbitration panel awarded Edward J. Geisler a total of $100,000. With regard to this award, the arbitrators stated:

**5.** Because the trial court found no error in the arbitrators' method of applying the set off provision, it necessarily did not reach this question. We note, however, that all relevant figures are of record, and thus we can make any necessary modifications to the awards.

In the case of the Plaintiff, Edward J. Geisler, we determined that his injuries were considerably in excess of the applicable policy limits which we found to be $100,000, and we thereupon simply awarded Edward J. Geisler the amount of $100,000, which counsel for both parties has [sic] stipulated was the extent of the potential liability of Motorists Mutual Insurance Company.

*Id.* at 2, R.R. at 31a. Because the actual damages sustained by Edward J. Geisler exceeded the policy limits, and because the arbitrators deducted the settlement amount from the actual damages rather than the policy limits, it is clear that the award must be modified. *See Bateman v. Motorists Mut. Ins. Co., supra.*

■ The parties disagree, however, as to the amount from the settlement that should be included in the set-off. Appellees argue that any set off can include only the $10,586.38 that was specifically designated as compensation for Edward J. Geisler's bodily injury. Appellant maintains, however, that the set off should include not only the bodily injury award, but also Geisler's pro-rated share ($4,234.55) [6] of the $10,000 attorney's fee that was incurred in obtaining the settlement. Thus, appellant argues that the award must be reduced by $14,820.93.

The set off clause drafted by appellant clearly stated that the insurer's liability was to be reduced by all sums paid because of *bodily injury* by any person or organization who was legally responsible. The settlement agreement with the legally responsible party (Schillinger's insurer) specifically distinguished between the amounts paid for bodily injury to each appellee and the overall amount paid for attorney's fees. As we have noted above, our focus when interpreting the provisions of an insurance contract is on the insured's reasonable expectations, *see Winters v. Erie Ins. Group, supra,* and, if a policy provision is ambiguous, it must be construed in favor of the insured. *See Standard Venetian Blind Co. v. American Empire Ins. Co., supra.* Here, because the settlement agreement distin-

6. This figure is derived from the following calculation:

guished between bodily injury and attorney's fees, a *literal* reading of the insurance policy would require us to hold that the attorney's fees cannot be included in the set off. The provision, however, is also subject to a contrary and equally reasonable interpretation: i.e., that the attorney's fees were an amount that was paid because of bodily injury in the sense that they were *generated* by the underlying suit to collect for bodily injury. Because the provision in question is ambiguous, we must conclude that Edward J. Geisler's award can be offset only by the amount that was paid to him for bodily injury, and not Geisler's pro-rated share of the attorney's fees. Accordingly, the arbitrators' $100,000 award to appellee Edward J. Geisler is reduced to *$89,413.62*, to reflect the $10,586.38 that he received in the third party settlement.

## CONCLUSION

For the foregoing reasons, we hold that the trial court and arbitrators properly allowed appellees to stack coverages, but that, under the setoff provision, the award to appellee Edward J. Geisler should have been reduced to *$89,413.62*. Accordingly, we affirm the judgment to the extent that it awards appellee Edward L. Geisler *$60,000;* we modify the judgment to the extent that it awards appellee Edward J. Geisler $100,000, by reducing the latter award to *$89,413.62*. As modified, the judgment is affirmed.

Judgment affirmed as modified.

$10,586.38 ............... award to Edward J. Geisler
$25,000.00 ............... total award paid directly to appellees
$10,000.00 ............... attorney's fees

$$\frac{\$10,586.38}{\$25,000.00} \times \$10,000.00 = \$4,234.55$$

(proportion of attorney's fee related to Edward J. Geisler's recovery)