# Hepler v. Liberty Mutual Fire Insurance Co.

*Richard C. Angino,* for plaintiffs.
*Thomas J. Williams,* for defendant.

HESS, *J.,* May 18, 1990 — On April 3, 1986, defendant issued to plaintiffs a motor vehicle insurance policy covering three vehicles. The policy provided liability coverage in the amount of $300,000 with a single limit, and uninsured and underinsured motorists (UM/UIM) benefits in the amount of $15,000 for each person and $30,000 for each accident. With regard to the UM/UIM coverage, the policy provided that these limits were to be reduced by any sums recovered from a responsible party.

The policy was renewed annually on its anniversary date in 1987 and 1988 and was in effect on May 19, 1988, when plaintiff, Diane E. Hepler, sustained serious personal injuries in a collision with a vehicle insured by Allstate Insurance Company. Allstate paid its liability policy limits of $100,000 and plaintiffs now claim underinsured benefits under their policy with defendant. Plaintiffs claim that, as to Mrs. Hepler, the court should disregard an election

of $15,000/$30,000 for uninsured and underinsured motorists benefits for the reason that Mrs. Hepler did not sign the form used to select the coverage limits. Plaintiffs also assert that the court should disregard the policy provision requiring that the UM/UIM coverage limits be reduced by the $100,000 recovered from Allstate. They are, in essence, seeking to reform the contract of insurance by raising the underinsured motorist limit to equal the liability limit of $300,000 and then stacking this limit for each of the three covered automobiles for a total of $900,000 without any reduction for the $100,000 received from Allstate.

Defendant filed preliminary objections to plaintiffs' complaint which included a demurrer which, if granted, would have enforced the $15,000 underinsured motorists limits provided in the policy. The demurrer was overruled by order and opinion dated March 2, 1989, this court holding that the election of the underinsured motorists limits was valid as to the husband but not as to the wife.

Subsequently, discovery was taken which included the deposition of both Mr. and Mrs. Hepler. By opinion and order dated October 19, 1989, the court continued to hold that the circumstances of the case were insufficient, as a matter of law, to support the conclusion that Mrs. Hepler was bound by the lower limits of underinsured motorists coverage. Plaintiffs have now filed a motion for summary judgment. Defendants have countered and raised, additionally, the issues of the stacking of underinsured limits to an amount higher than the liability limits and the question of the set-off of the $100,000 recovered from Allstate.

## DISCUSSION

Under Pennsylvania Rules of Civil Procedure 1035(b), summary judgment may be granted:

"[I]f the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."

In determining whether summary judgment should be entered, the following principles are applicable:

"The moving party bears the burden of demonstrating that no genuine issue of material fact exists and that he is entitled to judgment as a matter of law. *Thompson Coal Company v. Pike Coal Company*, 488 Pa. 198, 412 A.2d 466 (1979); *Weiss v. Keystone Mack Sales Inc.*, 310 Pa. Super. 425, 456 A.2d 1009 (1983). In determining whether the moving party has met this burden, the court must examine the record in the light most favorable to the non-moving party, giving that party the benefit of all reasonable inferences. . . . *Shacter v. Albert,* 212 Pa. Super. 58, 239 A.2d 841 (1968). . . . Summary judgment should be granted only in the clearest case, where the right is clear and free from doubt. *Thompson Coal Company v. Pike Coal Company, supra; Weiss v. Keystone Mack Sales Inc., supra.* " *Bertani v. Beck,* 330 Pa. Super. 248, 252, 479 A.2d 534, 535 (1984).

The Pennsylvania Motor Vehicle Financial Responsibility Law, in effect at the time the Heplers' insurance policy was issued to them, required insurance companies to provide underinsured motorist coverage in amounts equal to the coverage of bodily injury liability of the policy. Specifically, section 1731(a) states:

"(a) *General rule — No. motor vehicle liability insurance policy shall be delivered or issued* for delivery in this Commonwealth with respect to any motor vehicle registered or principally garaged in this Commonwealth, *unless uninsured motorist and underinsured motorist coverages are provided*

therein or supplemental thereto *in amounts equal to the bodily injury liability coverage except as provided in section 1734 (relating to request for lower or higher limits of coverage.* " (emphasis supplied)

By language which is crystal clear on its face, our legislature has imposed a virtual prohibition against UM/UIM limits which are lower than liability limits. The exception to this prohibition is where there has been a written request for lower limits pursuant to 75 Pa.C.S. §1734, which provides:

"§1734. *Request for lower or higher limits of coverage.*

"A *named insured* may request *in writing* the issuance of coverages under section 1731 (relating to scope and amount of coverage) in *amounts less than* the limits of liability for bodily injury but in no event less than the amounts required by this chapter for bodily injury. . ." (emphasis supplied)

Both Mr. and Mrs. Hepler are named insureds with respect to the insurance policy at issue. It is undisputed that the only writing requesting lower UM/UIM coverage is a document signed by Mr. Hepler. There is no evidence of such a request, in writing, from Mrs. Hepler. It is for this reason that, in our opinion dated March 2, 1989, in disposing of preliminary objections of defendant, we concluded that "the provisions of the policy, lowering the underinsured motorist coverage below that of the bodily liability coverage, is not effective as to Mrs. Hepler." *Hepler v. Liberty Mutual Fire Insurance Co.,* 3 D.&C. 4th 419, 423 (1989).

The matter is before us again; this time, on plaintiffs' motion for summary judgment. We thus have an opportunity to revisit the question of whether defendant may hold Mrs. Hepler to lower

limits of UM/UIM coverage even though her signature does not appear on the form requesting the lower limits.

Defendant has now filed an affidavit, dated February 8, 1990, of Joseph Duffy, the insurance agent who sold the subject policy of insurance to the Heplers. In pertinent part, the affidavit is essentially uncontradicted by the depositions of Michael and Diane Hepler, also filed in this case. Mr. Duffy indicates:

"(8) As to each type of coverage, after Mr. and Mrs. Hepler both indicated they understood and had no further questions, I recorded their decisions with a check mark next to the option choices. See exhibit 'B' attached hereto. As to each such decision, both Mr. and Mrs. Hepler separately indicated their concurrence. Although there was often discussion between the two of them as to what coverage was most desirable, there was never any disagreement or objection as to the final decision which I then indicated on the form with a check mark.

"(9) After all the selections had been made, I went over them again with Mr. and Mrs. Hepler and again asked if that was what they wanted. They both separately indicated, both verbally and by nodding their heads, that what was indicated on the form was what they wanted. At that point, with the form still in front of them (upside down to me), I stated that one of them would have to sign it. They glanced at each other and Mrs. Hepler said 'go ahead' or words to that effect to Mr. Hepler and he then signed the form, exhibit 'B.' "

The narrow question, brought into better focus by our re-examination of this case, is whether, in 75 Pa.C.S. §1734, the phrase "a named insured" should be interpreted as meaning "any named insured" or, as we have interpreted it in the past, to

mean "the named insured whose coverages are affected." In the only other case which we know of to deal with this issue. *Liberty Mutual Fire Insurance Co. v. Raymond F. Lindsey,* 3 D.&C. 4th 659 (1989), Judge Chronister has held that where a husband and wife were both named insureds, the signature of either was effective to elect lower limits. Our colleague in York County had little difficulty in reaching a conclusion tantamount to saying that "a named insured" in section 1731 means "any named insured." We do not reach that result with the same apparent ease of the York County court. Nonetheless, we now believe that the case of *Liberty Mutual Fire Insurance Co. v. Lindsey, supra,* is correctly decided and that our previous holding, in this case, was not.

It is true that the various orders in this litigation have occurred at different stages in the proceedings and that our arriving at a different conclusion now is motivated, in part, by the amplified record which we have before us. However, "we prefer to be more intellectually honest than to rely on such tenuous distinctions. Better should we say, '[w]isdom should never be rejected merely because it comes late.' " *Clevenstein v. Rizzuto,* 439 Pa. 397, 403, 266 A.2d 623 (1970).

In discussing a factual scenario virtually identical to the one sub judice, the York County court noted:

"Even if wife and husband have equal status, it does not follow that when they make different elections that different limits are thereby established. This reasoning ignores the 'one policy, one coverage' reality. Even though there were two named insureds, there is only one policy. That policy has specified limits, and a premium based on those limits. If the two insureds cannot agree on those limits, their only option is to have separate

policies. By electing to stay covered on a joint policy with her husband, a policy on which he elected lower limits, wife thereby confirmed and ratified that decision to elect lower limits. If wife did not accept husband's election, upon receipt of the policy with the lower limit and lower premium, she could have contacted the insurance company, informed them of the mistake, and requested it be corrected. Instead, she accepted the policy with the lower limits without complaint, and permitted the payment of the lower premium with joint funds. To find under these facts that wife is not bound by her husband's election, thereby creating a different limit for her, for which she has never paid an increased premium defies logic and reason." *Lindsey,* 3 D.&C. 4th at 666-7.

Notwithstanding, it can also be argued that the insurance company, faced with the written request of only one of the named insureds for a lesser limit of UM/UIM coverage, could have assessed the Heplers an additional premium based on increased risk exposure by virtue of the failure of Mrs. Hepler to elect the lower limits. That there can be only one policy, one set of coverages and one premium becomes clearer, however, when we examine the problem of persons who are insured but not named insureds.

Husbands and wives may be named insureds on a policy of insurance which also covers a minor driver in their custody.* If the husband has elected lower UM/UIM coverage and the wife has not, what is the

---

* Title 75 Pa.C.S. §1702 definitions define "insured" as including, in addition to an individual identified by name as an insured in a policy of motor vehicle liability insurance, a person residing in the household of the named insured, and specifically, "a minor in the custody of either of the named insured or relative of the named insured."

coverage for the child? There is simply no answer to this question unless one construes 75 Pa.C.S. §1734 to permit any named insured to request lower limits and bind all insureds in the policy. We therefore conclude that defendants may argue that Mrs. Hepler is bound by the uninsured and underinsured limits of liability requested in writing by her husband. We will therefore deny the motion for summary judgment of plaintiff.

At the same time, we are not in a position to issue summary judgment in favor of defendant, notwithstanding the fact that they previously filed such a motion. Defendant's previous motion for summary judgment raised issues of agency between Mr. and Mrs. Hepler and are different from the issues framed by plaintiffs' motion now before us. We therefore apply the general rule that entry of summary judgment in favor of the non-moving party is improper. *Bensalem Township School District v. Commonwealth*, 518 Pa. 581, 544 A.2d 1318 (1988).

Also before us are motions for partial summary judgment filed by defendant. The first of these seeks from the court a declaration, as a matter of law, that plaintiffs may not stack their underinsured motorist benefits in excess of their liability policy limits. We will dismiss this motion for partial summary judgment, in essence deferring the resolution of this question until such time as it is squarely before us. The fact finder, at the trial of this case, may well find that the Heplers' election of lower uninsured motorist coverage was valid. In that event, even with stacking, the amount of their underinsured motorist coverage is less than their liability coverage. The question would thus be rendered moot.

The other motion of defendant seeks a direction from this court that, inasmuch as the tort-feasor in

the accident of May 19, 1988, has tendered policy limits in the amount of $100,000, any underinsured motorist benefits, payable in this case, should be reduced by that amount. In support of the propriety of such setoffs, defendant has cited *Bateman v. Motorists Mutual Insurance Co.*, 377 Pa. Super. 400, 547 A.2d 428 (1988) and *Geisler v. Motorists Mutual Insurance Co.*, 382 Pa. Super. 622, 556 A.2d 391 (1989). These cases recognize, generally, the validity of setoff provisions in insurance contracts. In *Bateman,* the Superior Court held that the amounts received in settlement must be set off against the limits of an insured's liability, and not against the total amount of damages suffered by the insured. *Id.* at 404-5, 547 A.2d at 431. *Geisler* dealt with two plaintiffs, one whose actual injuries were substantially less than the underinsurance limits of his policy and another whose injuries were substantially more. The court in *Geisler* held that when "the insured's injuries are less than the policy limits, the insurer . . . is responsible only for those actual damages minus any applicable set off." *Id.* at 633, 556 A.2d at 397. The court went on to hold that in the event that actual damages exceed the policy limits, settlement amounts must be deducted from policy limits rather than from the amount of actual damages determined. We recognize that any setoff in this case will occur as a matter of law and that the practical result is the reduction of Liberty Mutual's underinsurance liability exposure by $100,000. On the other hand, neither the policy limits nor the actual damages have been determined in this case. Thus, we prefer to wait before making any final pronouncements concerning setoffs to be applied in this case. We will therefore dismiss defendant's motion for summary judgment without prejudice to

defendant's claim for setoff once the damages and policy limits have been determined in the matter.

## ORDER

And now, May 18, 1990, the motion of plaintiff for summary judgment is denied. The motions of defendant for partial summary judgment are denied.