**Sid BURSTEIN and Doreen Burstein, Appellees,**

v.

**PRUDENTIAL PROPERTY AND CASUALTY INSURANCE COMPANY, Appellant.**

Superior Court of Pennsylvania.

Argued June 14, 1999.

Filed Nov. 29, 1999.

Charles W. Craven, Philadelphia, for appellant.

Milton J. Frank, Philadelphia, for appellees.

Before McEWEN, President Judge, and CAVANAUGH, KELLY, POPOVICH, JOHNSON, FORD ELLIOTT, STEVENS, SCHILLER and LALLY-GREEN, JJ.

SCHILLER, J.:

¶ 1 Appellant, Prudential Property and Casualty Insurance Company, appeals from an order dated June 2, 1997, in the Court of Common Pleas of Philadelphia County. We affirm and hold that the "regularly used non-owned car" exclusion is void as against public policy under the facts of this case.

FACTS:

¶ 2 On September 4, 1993, Appellees, Sid and Doreen Burstein, were returning from dinner and a movie when a speeding motorcyclist struck their automobile. The automobile, which was being driven by Mr. Burstein at the time, had been provided to Mrs. Burstein by her employer; Mrs. Burstein was in the passenger seat when the accident occurred.[1] Although Mrs. Burstein used the vehicle primarily for business purposes, she paid a $25.00 weekly fee allowing her and her husband to drive it for personal use.[2] Mrs. Burstein's employer did not notify her of the types of coverage he had purchased for the company vehicle, nor did he give her the option to change such coverage. Stipulated Facts, at ¶¶ 12, 14.

¶ 3 After the accident, Appellees recovered from the negligent motorcyclist's insurance carrier. Appellees were not, however, fully compensated for their injuries because the liability limits of the motorcyclist's insurance policy proved inadequate. As such, Appellees submitted a claim for underinsured motorist coverage under Mrs. Burstein's employer's insurance policy. It was at that time that Appellees

---

1. We note that both the trial court opinion and our panel Memorandum indicate that Mrs. Burstein was driving the vehicle. However, according to the facts stipulated to by the parties, Mr. Burstein was operating the vehicle at the time of the accident.

2. Appellees indicate that they drove the company vehicle on the night in question by chance because it was parked at the end of the driveway, thereby blocking their other vehicles.

were informed that the employer's policy did not include underinsured motorist coverage. Appellees therefore filed a claim for underinsured motorist benefits under their personal policy; Appellees owned three motor vehicles, all insured under a single policy with Appellant that provided both liability and underinsured motorist coverage. Appellant subsequently denied coverage based on a policy exclusion for a "regularly used non-owned car" not insured under their policy.[3]

¶ 4 Appellees thereafter filed suit, and on March 14, 1996, a panel of arbitrators found that the exclusion violated public policy when applied to Mr. Burstein but upheld it in regard to Mrs. Burstein. Both Appellees and Appellant petitioned the trial court for a modification of the arbitrator's decision to reflect their respective positions. The trial court found that the exclusion violated public policy in regard to both Appellees, thereby affirming the arbitrator's decision as to Mr. Burstein but reversing it as to Mrs. Burstein. A divided panel of this Court affirmed the trial court's decision. This appeal followed.

DISCUSSION:

 ¶ 5 Appellant raises one issue on appeal: whether the trial court erred in finding that the "regularly used non-owned car" exclusion contained in Appellees' insurance policy was void as against public policy. We note at the outset that we will reverse a trial court's decision to vacate an arbitration award only for an abuse of discretion or error of law. *Patton v. J.C. Penney Ins. Co.*, 445 Pa.Super. 317, 665 A.2d 510 (1995). However, where the trial court determines that a provision in an

insurance policy violates the public policy of this Commonwealth, our standard of review is plenary as said issue presents a question of law for our determination. *See generally Phillips v. A–Best Products Co.*, 542 Pa. 124, 130, 665 A.2d 1167, 1170 (1995).

¶ 6 The particular policy exclusion in question provided that Appellees were not entitled to recover underinsured motorist coverage if they were using a regularly used, non-owned vehicle not insured under their policy.[4] Appellees argue, and the trial court agreed, that because underinsured motorist coverage follows the person, not the vehicle, and because the Motor Vehicle Financial Responsibility Law (MVFRL)[5] is to be liberally construed to provide the fullest possible coverage, this particular exception is void as against public policy. Appellant, on the other hand, claims that voiding such an exclusion would not further the public policy of this Commonwealth but rather would hinder it, citing to other public policy as well as prior case law.

¶ 7 In deciding whether a provision of an insurance contract should be held void as against public policy, we are mindful of the following:

"Public policy is to be ascertained by reference to the laws and legal precedents and not from general considerations of supposed public interest. As the term 'public policy' is vague, there must be found definite indications in the law of the sovereignty to justify the invalidation of a contract as contrary to that policy.... Only dominant public policy would justify such action. In the absence of a plain indication of that policy through long governmental practice

---

3. The exclusion provided as follows: "We will not pay for bodily injury to you or a household resident using a non-owned car not insured under this part, regularly used by you or a household resident."

4. Appellees do not dispute that the language of the policy exclusion, as applied, would bar their recovery of underinsured motorist coverage from Appellant. *See Insurance Co. of*

*the State of Pennsylvania v. Hampton,* 441 Pa.Super. 382, 657 A.2d 976, 977–78, *appeal denied,* 542 Pa. 647, 666 A.2d 1056 (1995) (stating that where a provision of a contract is clear and unambiguous, it will be applied as written).

5. 75 Pa.C.S. §§ 1701–1799.7.

or statutory enactments, or of violations of obvious ethical or moral standards, the Court should not assume to declare contracts ... contrary to public policy. The courts must be content to await legislative action."

*Hall v. Amica Mut. Ins. Co.*, 538 Pa. 337, 347–48, 648 A.2d 755, 760 (1994) (quoting *Muschany v. United States*, 324 U.S. 49, 66–67, 65 S.Ct. 442, 451, 89 L.Ed. 744, 756 (1945)) (alterations in original).

"It is only when a given policy is so obviously for or against the public health, safety, morals or welfare that there is a virtual unanimity of opinion in regard to it, that a court may constitute itself the voice of the community in so declaring. There must be a positive, well-defined, universal public sentiment, deeply integrated in the customs and beliefs of the people and in their conviction of what is just and right and in the interest of the public weal.... Only in the clearest cases, therefore, may a court make an alleged public policy the basis of judicial decision."

*Id.* (quoting *Mamlin v. Genoe*, 340 Pa. 320, 325, 17 A.2d 407, 409 (1941)) (alteration in original). Moreover, a key focus in deciding whether to uphold a policy exclusion, which operates to deny coverage to an injured party, is on the factual circumstances of the particular case. *Paylor v. Hartford Ins. Co.*, 536 Pa. 583, 587, 640 A.2d 1234, 1235 (1994).

¶ 8 We note, however, that we are not called upon in this case to decide whether a particular concept is so engrained in our customs and beliefs that it rises to the level of public policy; both Appellant and Appellees cite to public policies that are well-defined and universally accepted in this Commonwealth. Rather, it is the duty of this Court to weigh those competing public policy interests and determine which interest prevails under the circumstances presented. We find that the pre-

vailing policies are those which favor *voiding* the exclusion.

■ ¶ 9 The first public policy in favor of voiding the exclusion is that the MVFRL was enacted in order to establish a liberal compensatory scheme of underinsured motorist protection, *Marroquin v. Mutual Benefit Ins. Co.*, 404 Pa.Super. 444, 591 A.2d 290, 293 (1991), and should be construed to provide the greatest possible coverage to injured claimants. *Danko v. Erie Ins. Exch.*, 428 Pa.Super. 223, 630 A.2d 1219, 1222 (1993), *aff'd* 538 Pa. 572, 649 A.2d 935 (1994). "'In close or doubtful cases, we must interpret the intent of the legislature and the language of insurance policies to favor coverage for the insured.'" *Allwein v. Donegal Mut. Ins. Co.*, 448 Pa.Super. 364, 671 A.2d 744, 751 (*en banc*), *appeal denied*, 546 Pa. 660, 685 A.2d 541 (1996) (quoting *Motorists Ins. Companies v. Emig*, 444 Pa.Super. 524, 664 A.2d 559, 566 (1995)).

■ ¶ 10 The second public policy favoring Appellees' position is that it is in the public's best interest for insurance companies to provide underinsured motorist coverage. *Marroquin, supra* at 296 (stating that "this Commonwealth considers underinsured motorist coverage to be in the public interest"). Underinsured motorist coverage is designed to protect an insured from a negligent driver of another vehicle, who causes injury to the insured and lacks adequate insurance coverage to compensate the insured for those injuries. *Eichelman v. Nationwide Ins. Co.*, 551 Pa. 558, 711 A.2d 1006 (1998); *Paylor, supra*; *Wolgemuth v. Harleysville Mut. Ins. Co.*, 370 Pa.Super. 51, 535 A.2d 1145 (*en banc*), *appeal denied*, 520 Pa. 590, 551 A.2d 216 (1988). Prior to the passage of the MVFRL, motor vehicle drivers were required to carry uninsured motorist coverage but not underinsured motorist coverage.[6] As a result, an individual involved in a motor vehicle accident was in a better

6. Pennsylvania had in place the No–Fault Motor Vehicle Insurance Act, 40 P.S. § 1009.101.

position if injured by a negligent driver who was uninsured rather than one who had insurance but whose liability limits were inadequate. In an attempt to rectify this inequity, the legislature passed the MVFRL, requiring insurers to offer underinsured motorist coverage. 75 Pa.C.S. § 1731(a).[7] Appellees are precisely the type of individuals who underinsured motorist coverage was designed to protect— individuals injured by a tortfeasor with inadequate insurance coverage.

¶ 11 Finally, the public policy we find most persuasive is that underinsured motorist coverage is first-party coverage and therefore necessarily follows the person, not the vehicle. *Wolgemuth, supra.* This means that if an individual purchases underinsured motorist coverage, that individual will be protected from negligent drivers with inadequate coverage regardless of the vehicle in which he or she happens to be injured. We have stated in the past that " '[o]rdinarily, a passenger injured in a one-car accident involving someone else's car ... would be able to recover underinsured motorist benefits under his or her own underinsured motorist coverage.' " *Id.* at 1150 (quoting *Myers v. State Farm Mut. Auto. Ins. Co.*, 336 N.W.2d 288, 291 (Minn.1983)).

¶ 12 The statutory language of the MVFRL evidences this key concept; the language clearly contemplates a situation in which an insurance company will be required to provide underinsured motorist coverage for an insured who is injured while using a vehicle not covered under one of its policies. When an individual is injured in a motor vehicle accident, the tortfeasor's insurance carrier must compensate that individual for his or her injuries. *See generally* 75 Pa.C.S. §§ 1701–1799.7. If the tortfeasor's policy limits are inadequate, the individual is also entitled to recover underinsured motorist coverage from his or her personal insurance carrier, provided that the individual did not waive such coverage. Where the insured is covered by more than one policy providing underinsured motorist coverage, however, the MVFRL specifically states that the policy covering the motor vehicle involved in the accident must pay first, followed by the "policy *covering a motor vehicle not involved in the accident* with respect to which the injured person is an insured." 75 Pa.C.S. § 1733(a)(2) (emphasis added).[8] This Court finds that voiding the "regularly used non-owned car" exclusion under the facts of this case furthers the aforementioned public policies by providing the greatest possible coverage to the Appellees, by compensating them for injuries

7. When first enacted, the MVFRL *required* all automobile drivers to carry both uninsured and underinsured motorist coverages. It was subsequently amended in 1990 to eliminate this mandatory requirement. The MVFRL currently requires insurers to offer both uninsured and underinsured motorist coverages but makes purchase of such coverage by the insured optional. In contrast, the MVFRL requires all insureds to maintain liability coverage on the vehicles they own. *See* 75 Pa. C.S. § 1786(a).

8. According to the language in section 1733(a)(2), if Mrs. Burstein's employer had purchased underinsured motorist coverage for this company vehicle and that coverage proved inadequate, Appellees would have also been entitled to recover underinsured motorist coverage from their personal policy with Appellant; this recovery would be mandated despite the fact that their policy did not spe-

cifically cover the company vehicle, and seemingly without regard to any policy exclusion. Section 1733 further states that "[t]he insurer against whom a claim is asserted first ... shall process and pay the claim as if wholly responsible.... The insurer is thereafter entitled to recover contribution pro rata from any other insurer...." 75 Pa.C.S. 1733(b). Inasmuch as Appellant would have been required to provide underinsured motorist coverage to Appellees *had* Mrs. Burstein's employer *purchased* underinsured motorist coverage and that coverage had also proved inadequate, query whether the employer's failure to offer Mrs. Burstein such coverage or, at the very least, to notify her that such coverage had been waived gives Appellant the right to sue the employer. As that issue is not one of the questions presented to this Court, however, we cannot address it.

caused by a tortfeasor who had inadequate coverage, and by allowing them to recover underinsured motorist coverage they had specifically paid for under their policy with Appellant.

¶ 13 Appellant, on the other hand, argues that voiding the exclusion violates other public policy of this Commonwealth, namely that the legislature's goal in enacting the MVFRL was to alleviate "the spiralling consumer cost of automobile insurance and the resultant increase in the number of uninsured motorists driving on public highways." *Paylor, supra* at 587, 640 A.2d at 1235. *See also Eichelman, supra.* The insurance policy issued to Appellees covered certain non-owned vehicles—replacement cars, additional cars, and substitute cars. Appellant asserts that most insurance companies are willing to assume the risk of an insured getting in an accident involving one of these vehicles, without raising premiums, because the use of these vehicles is infrequent and the risk of injury is therefore slight. In fact, Appellant acknowledges that the cost associated with such a risk is actually built into the premiums it currently charges.

¶ 14 However, as the frequency of operating the vehicle increases, so does the risk that the insured will be injured by an underinsured motorist. Voiding this particular exclusion in every insurance policy would essentially require insurance companies to provide underinsured motorist coverage for all company cars used by their insureds when such coverage was never discussed, contemplated or paid for by the insured, a risk many insurance companies would deem substantial. Appellant argues that because insurance companies are not willing to insure against a risk they perceive as substantial, the most likely result would be an increase in premiums, which would clearly be contrary to the public policy underlying the MVFRL. *See generally Hall, supra* at 349, 648 A.2d at 761 (noting that there is a direct correlation between the premiums paid by the insured and the coverage the claimant should reasonably expect to receive). Because of the likelihood of an increase in insurance premiums, Appellant argues that this Court should uphold the "regularly used nonowned car" exclusion.

¶ 15 If we were to adopt Appellant's logic, however, this Court would never be able to find an exclusion void on the basis that it violated public policy. Exclusions by their nature preclude an insured from recovering a certain type of insurance coverage—whether it be liability, uninsured, or underinsured—in a particular situation and therefore effectively limit costs. Voiding an exclusion necessarily makes insurance companies provide more coverage than anticipated, thereby creating the possibility of an increase in premiums. This Court has, however, specifically voided policy exclusions in the past despite the possibility of an increase in insurance premiums. *See Marroquin, supra* at 293 (voiding the family car exclusion as against public policy under the facts of the case).

¶ 16 Furthermore, upon a closer look at the public policy cited by Appellant, we find that it would *not* be impaired by voiding the exclusion in this case. To alleviate the spiralling cost of insurance, the legislature drafted the MVFRL to encourage motor vehicle drivers to purchase insurance—increasing the pool of insured motorists would necessarily reduce the cost of insurance. One method of encouraging drivers to purchase insurance was by denying benefits to those who were involved in an accident but who did not have insurance.[9] The MVFRL therefore has " 'the effect of requiring all owners of registered

---

9. For example, section 1714 of the MVFRL specifically states the following:

> *An owner of a currently registered motor vehicle who does not have financial responsibility* or an operator or occupant of a recreational vehicle not intended for high-

way use, motorcycle, motor-driven cycle, motorized pedalcycle or like type vehicle required to be registered under this title *cannot recover first party benefits.*

75 Pa.C.S. § 1714 (emphasis added).

vehicles to share in the burden of insurance before they can obtain the benefits [of coverage].'" *Windrim v. Nationwide Ins. Co.*, 537 Pa. 129, 134, 641 A.2d 1154, 1157 (1994) (quoting *Allen v. Erie Ins. Co.*, 369 Pa.Super. 6, 534 A.2d 839, 840–41 (1987)).

¶ 17 Moreover, providing individuals an incentive to insure their vehicles has been the basis of the holdings in two recent Pennsylvania Supreme Court cases. In *Eichelman v. Nationwide Insurance Co.*, *supra*, the injured party waived underinsured motorist coverage under his personal policy but later tried to recover such benefits from two other policies—one maintained by his mother and the other by her husband.[10] In *Windrim v. Nationwide Insurance Co.*, *supra*, the plaintiff was injured by a hit-and-run driver while operating an uninsured vehicle and tried to recover uninsured motorist benefits from his mother's policy. In both cases, our Supreme Court upheld a family car exclusion clause which stated that the insurer would not provide uninsured/underinsured motorist coverage to an insured who was injured while occupying a motor vehicle owned by the insured or a relative that was not insured for uninsured/underinsured motorist coverage under the policy. One of the main reasons for the Court's holding in both cases was that voiding the exclusion under those particular facts would have had the effect of allowing an entire family, living in one household with numerous automobiles, to obtain underinsured motorist coverage for all of those

vehicles by simply purchasing an insurance policy covering only one vehicle. *Eichelman*, *supra* at 567, 711 A.2d at 1010; *Windrim*, *supra* at 136, 641 A.2d at 1158. This rationale suggests that an exclusion will be upheld when it provides an incentive to individuals to purchase insurance.

¶ 18 Upholding the "regularly used non-owned car" exclusion in the case *sub judice*, however, would not have provided an incentive for Appellees to purchase insurance. Appellees obtained both liability and underinsured motorist coverage on all of the vehicles that they owned and paid $25.00 per week to allow them to drive Mrs. Burstein's company car for personal use. Appellees were not trying to avoid their responsibility of purchasing insurance or to deceive their insurance company into providing coverage not bargained for. To the contrary, Appellees acted in full accordance with the MVFRL, obtaining both liability and underinsured motorist coverages on all three of the vehicles they owned.

¶ 19 In regard to the company vehicle, Appellees were not operating a vehicle that they knew was not covered by underinsured motorist coverage as was the case in *Eichelman*, *supra*. Mrs. Burstein was never made aware of the types of insurance which covered the company vehicle nor was she advised that her employer waived underinsured motorist coverage.[11] Further, even if she had known that such coverage was waived, she would not have been given the option to add it to her employer's insurance policy.[12] We there-

---

**10.** At the time of the accident, plaintiff was living at his mother's residence. He claimed that he was entitled to recover underinsured motorist benefits under the two policies because each provided underinsured motorist coverage to the named insured and *any relative who resided with the named insured. Id.*

**11.** We are compelled to note that had Appellees known that Mrs. Burstein's employer waived underinsured motorist coverage, their decision to drive the company vehicle would have, at the very least, been an informed one. In fact, had they known, it is possible that they would have chosen to drive one of the

vehicles they owned, all of which were specifically covered by underinsured motorist coverage, rather than the company vehicle.

**12.** We are mindful of the argument that voiding this exclusion provides no incentive for employers to purchase underinsured motorist coverage for their company vehicles, since their employees may obtain such coverage under their personal insurance policies in certain situations. However, given the fact that employers have no incentive to purchase such coverage even *with* this policy exclusion, such an argument carries little weight.

fore find that the public policy cited by Appellant would not be furthered by upholding the exclusion in this case. *See Paylor, supra* at 587, 640 A.2d at 1240 (noting that "[t]he enforceability of the [family car] exclusion is dependent upon the factual circumstances presented in each case.").

¶ 20 In sum, we find that in this case the public policies in favor of *voiding* the exclusion supersede that which favors upholding it. We therefore hold that under the present facts—where an insured has complied with both the letter and spirit of the MVFRL and was not notified that the vehicle he or she was regularly using was not covered by underinsured motorist coverage—the policy provision denying underinsured motorist coverage for a "regularly used non-owned car" is void as against public policy.

CONCLUSION:

¶ 21 Accordingly, we affirm the order dated June 2, 1997, in the Court of Common Pleas of Philadelphia County, voiding the "regularly used non-owned car" exclusion in Appellees' insurance policy as against public policy.

¶ 22 McEWEN, President Judge, files a Concurring and Dissenting Statement, joined by FORD ELLIOTT, J. and LALLY–GREEN, J.

¶ 23 CAVANAUGH, J., files a Dissenting Opinion, joined by POPOVICH and JOHNSON, JJ.

McEWEN, President Judge, concurring and dissenting:

¶ 1 While I hasten to agree with the majority that the trial court properly disregarded the exclusion at issue and awarded appellees, class one insureds, UIM benefits, I proceed to this conclusion by way of a slightly different path from that of my learned colleagues of the majority.

¶ 2 It merits mention at the outset that I am unable to agree with the statement that "underinsured motorist coverage follows the person, not the vehicle". UIM and UM insurance are now optional coverages which may be, but are not required to be, purchased by an insured. *Allwein v. Donegal Mutual Insurance Co.,* 448 Pa.Super. 364, 671 A.2d 744, 754 (1996)(*en banc*). While often referred to as "first party benefits," UM and UIM benefits are not true "first party benefits", for the current incarnation of the MVFRL defines "first party benefits" as "medical benefits, income loss benefits, accidental death benefits and funeral benefits." 75 Pa.C.S. § 1702. First party benefits, unlike UM and UIM benefits, truly do "follow the insured", because the MVFRL provides for first party benefits to be paid "[f]or a named insured, [by] the policy on which he is the named insured; (2)[f]or an insured, [by] the policy covering the insured." 75 Pa.C.S. § 1713(a)(1) and (2). It is only when the injured claimant is not an "insured" under a policy of insurance that first party benefits are payable by the insurer of the vehicle in which the injured claimant was an occupant. 75 Pa.C.S. § 1713(a)(3).

¶ 3 Section 1733 of the MVFRL provides a priority of recovery for UIM and UM benefits which is the **inverse** of first party benefits, *i.e.*, an injured claimant must first look to the **vehicle** in which he or she was an occupant. 75 Pa.C.S. § 1733(a)(1). "A policy covering a motor vehicle not involved in the accident with respect to which the injured person is an insured"[13] is an alternative, secondary source of UM/UIM benefits under the scheme created by the MVFRL.

¶ 4 The appellees in the instant case purchased UM/UIM coverage for each of the three cars which they owned. Many, if not most, of the claimants who have litigated the issue of entitlement to UM/UIM benefits have claimed entitlement to such coverages based solely on the fact that

---

**13.** 75 Pa.C.S. § 1733(a)(2).

they were members of the named insured's household and were injured in an accident involving a vehicle not insured by the policy under which the resident relative sought UM/UIM benefits. In such cases, this Court has repeatedly denied coverage by reasoning that "the MVFRL was never intended to apply in a manner that would allow individuals and family members who owned several vehicles to purchase coverage for only one vehicle and recover uninsured or underinsured motorist benefits while operating a vehicle which was not insured." *Insurance Co. of the State Of Pennsylvania v. Hampton,* 441 Pa.Super. 382, 657 A.2d 976, 980 (1995), *appeal denied,* 542 Pa. 647, 666 A.2d 1056 (1995).

¶ 5 Part 5 of the policy issued to appellees by appellant specifically provided coverage for:

### UNDERINSURED MOTORISTS COVERAGE

If **you** have this coverage (see the Declarations), **we** will pay up to **our** limit of liability for **bodily injury** that is covered under this part when an insured (whether or not occupying a **car**) is struck by an underinsured **motor vehicle**. Our payment is based on the amount that an insured is legally entitled to recover for **bodily injury** but could not collect from the owner or driver of the underinsured motor vehicle because:

 The owner or driver is underinsured.

\* \* \* \*

This part covers cars for which a premium charge for this coverage is shown on the Declarations.

\* \* \* \*

### OTHER NON–OWNED CARS

In addition to **SUBSTITUTE CARS, we** will cover a **non-owned car**. The owner must give permission to use it. The

**non-owned car** must be used in the way intended by the owner. This includes a rented **car** for a period of up to 30 consecutive days. The **non-owned car** has the same coverage as any one of **your cars** insured with **us**.

### WHO IS INSURED (PART 5)
### IN YOUR CAR (INCLUDES A SUBSTITUTE CAR)

**You** and a **resident relative** are insured while using your **car** or a substitute **car** covered under this part.

Other people are insured while using **your car** or a substitute **car** covered under this part if **you** give them permission to use it. They must use the **car** in the way **you** intended.

### IN A NON–OWNED CAR

**You** and a **resident relative** are insured while using a **non-owned car**. The owner must give permission to use it. It must be used in the way intended by the owner.

### HIT BY A MOTOR VEHICLE

**You** and a **resident relative** are insured if hit by an underinsured **motor vehicle** while a pedestrian.

### LOSSES WE WILL NOT PAY FOR (PART 5)

\* \* \* \*

### REGULARLY USED NON–OWNED CARS

**We** will not pay for **bodily injury** to **you** or a **household resident** using a **non-owned car** not insured under this part, regularly used by **you** or a **household resident**.

Thus, the policy issued by appellant expressly provided for UM/UIM benefits for a named insured, such as the appellees, even when operating a non-owned car for business purposes.[14] The exclusionary clause upon which appellant relies in the instant case, which operates to preclude

---

14. The policy at issue also specifically excluded coverage for business-related uses as follows:

 **BUSINESS OR JOB**

 **We** will not pay for **bodily injury** to anyone (other than **you** or a **resident relative**) using a **non-owned car** in any business or job.

coverage for a non-owned vehicle "regularly used by you or a household resident", is applicable not because appellees were injured while using a vehicle owned by Mrs. Burstein's employer, but **only** because of the "regular use" of the non-owned vehicle by appellants. This exclusion for "regularly used" vehicles was specifically designed to prevent a household with multiple vehicles from being able to purchase a policy with UM/UIM benefits for only a single vehicle and yet collect UM/UIM benefits when any of the other vehicles, not insured for such coverages, were involved in an accident. "[T]he exclusion prevents 'abuse by precluding the insured and his family from regularly driving two or more cars for the price of one policy.'" *Crum and Forster Personal Insurance Co. v. Travelers Corp.*, 428 Pa.Super. 557, 631 A.2d 671, 673 (1993), quoting *Highlands Ins. Co. v. Universal Underwriters Insurance Co.*, 92 Cal.App.3d 171, 176, 154 Cal.Rptr. 683, 687 (1979).

¶ 6 This Court in *Pecorara v. Erie Insurance Exchange*, 408 Pa.Super. 153, 596 A.2d 237 (1991), observing the settled principle that exclusions to an insurer's general liability are strictly constructed against the insurer, found that an exclusion in a policy, issued pursuant to the MVFRL, applicable to use of the vehicle by any person "employed by an automobile business", was inapplicable because "[t]he automobile business exclusion was intended to encompass a specific risk, a risk which did not exist under the present circumstance [where it was only coincidental that the driver was an employee of an automobile business]."

¶ 7 Thus it is that, upon that same rationale, I would find that the specific risk which the exclusion at issue in the instant case was drafted (and approved by the Insurance Commissioner) to preclude, was the payment of only one premium by an insured household which could then attempt to claim coverage for multiple vehicles not insured under the policy. This risk, of course, is not implicated under the specific facts of this case. As our learned colleague Judge Joseph A. Del Sole noted in *McKuhn v. Aetna Casualty and Surety Co.*, 444 Pa.Super. 483, 664 A.2d 175, 177 (1995), "what *Pecorara* teaches is that we are to examine the conduct at issue to see if it is contemplated by the exclusion. We must ask whether the exclusion was meant to protect against the risk occasioned by the conduct." Having examined the conduct at issue, I do not hesitate to find that the exclusion is inapplicable to the facts presently before this Court. Thus I concur in the result of the majority.

¶ 8 Moreover, in direct contradiction of the argument of appellant, I am unable to find any support in the record for the proposition that the effect of a decision by this Court invalidating the clause at issue under the precise facts of the instant case would cause an increase in the cost of car insurance.[15] UIM and UM benefits are not first party benefits which are mandatory, but are separate, optional benefits, regulated by a separate subchapter of the MVFRL. *See:* 75 Pa.C.S. §§ 1731–1738; *Hall v. Amica Mutual Insurance Co.*, 538 Pa. 337, 348, 648 A.2d 755, 760–761 (1994). UM/UIM coverages are marketed by insurance companies as providing "personal protection" for the insured and members of his or her family. The majority, by finding the clause at issue herein invalid under the particular circumstances of this case, is simply requiring appellant to provide the coverage which appellees attempted to purchase from appellant and for

---

15. Since UM/UIM coverages are now optional, I am at a loss to comprehend how an increase in the costs of such **optional**, separately billed coverages could result in an increase in the cost of the **required** coverages and thus cause or contribute to an increase in the number of illegally uninsured motorists in this state. I agree, of course, with the members of the minority that the public policy embodied in the current MVFRL, as noted by our Supreme Court in *Windrim v. Nationwide Insurance Co.*, 537 Pa. 129, 134, 641 A.2d 1154, 1157 (1994), is cost-containment of **required** coverages to preclude or reduce the number of illegally uninsured vehicles on the highways.

which appellees paid appellant premiums.[16] Thus, I concur in the decision to affirm the order entered by the distinguished Judge Mary D. Colins.

¶ 9 FORD ELLIOTT and LALLY–GREEN, JJ., join this Concurring and Dissenting Statement.

CAVANAUGH, J., dissenting:

¶ 1 I respectfully dissent from the result reached by the majority. I would hold that the "regularly used non-owned car" exclusion in appellees' policy of insurance is not violative of public policy and should be applied as part of the policy of insurance under which the Burstein's seek to recover underinsured motorist benefits.

¶ 2 It is important to observe at the outset that the present claim is asserted by the Bursteins under their own insurance policies and that therefore the exclusion under consideration is from an insurance contract that they themselves purchased for an agreed premium.

¶ 3 I note that the exclusion at issue is not challenged on any basis other than its application in consideration of public policy. The Bursteins do not contend that the language is unclear or ambiguous, or that the vehicle in which they were injured was not regularly used by one or both of them.

¶ 4 I further note that under the terms of the policy purchased by the Bursteins from Prudential, coverage is provided for bodily injury sustained by an insured who is "hit" by an underinsured motor vehicle while a pedestrian or who is injured while using a substitute car (one borrowed temporarily) or a non-owned car with the owner's permission (not regularly used). Thus, our review is a narrow one pertaining to the legitimacy of the regularly used non-owned car exclusion in the context of an insurance policy which explicitly provides for underinsured motorist coverage in several specified instances.

¶ 5 The majority errs in its application of public policy by ignoring explicit pronouncements from the supreme court regarding public policy as it pertains to the Motor Vehicle Financial Responsibility Law (MVFRL). There are not many, competing policies to be weighed and balanced against one another, but rather a single public policy which informs application of the MVFRL. By engaging in an analysis which posits the existence of numerous public policies, the majority transgresses the juridical precept that precedent created by the supreme court may not be disregarded by this court. *See Commonwealth v. Shaffer*, 557 Pa. 453, 460 n. 6, 734 A.2d 840 (1999); *Commonwealth v. Randolph*, 553 Pa. 224, 718 A.2d 1242 (1998).

¶ 6 "The legislative concern for the increasing cost of insurance is the public policy that is to be advanced by statutory interpretation of the MVFRL. This reflects the General Assembly's departure from the principle of 'maximum feasible restoration' embodied in the now defunct No–Fault Act." *Paylor v. Hartford Ins. Co.*, 536 Pa. 583, 587, 640 A.2d 1234, 1235 (1994). *Accord Rump v. Aetna Casualty and Surety Co.*, 551 Pa. 339, 345, 710 A.2d 1093, 1096 (1998); *Donnelly v. Bauer*, 553 Pa. 596, 606, 720 A.2d 447, 452 (1998). Thus, the only proper consideration of public policy is whether an exclusion clause runs afoul of the legislative "concern for the spiraling consumer cost of automobile insurance and the resultant increase in the number of uninsured motorists driving on the public highways." *Id.*

¶ 7 The *purpose of protecting innocent victims from underinsured motorists* who cannot adequately compensate the victims for their injuries *does not rise to the level of public policy* overriding every other consideration of contract construction. *Ei-*

16. As all of the vehicles owned by appellees were insured for UM/UIM benefits, the fee charged by appellant surely reflected the actual underwriting risk.

*chelman v. Nationwide Ins. Co.*, 551 Pa. 558, 566, 711 A.2d 1006, 1010 (1998) (emphasis supplied).[17]

¶ 8 The majority does not support its rationale by applying the sole public policy of cost containment of insurance premiums. Were it to properly confine its inquiry into public policy to the limited domain of cost containment, it, in all likelihood, would uphold the validity of the exclusion at issue.

¶ 9 There exists no public policy in favor of mandatory underinsured motorist coverage. The MVFRL requires, since the 1990 amendments, that such coverage be offered for sale, but it need not be purchased. The exclusion for regularly used non-owned cars was apparent on its face and clearly worded in the policy. The Bursteins knew, or should have known, that they were not paying for underinsured motorist coverage for the automobile in which they were injured.

¶ 10 The concept of portability of underinsured motorist coverage is rooted in an interpretation of the particular insurance policy at issue. Here, the policy provides for limited portability to instances of an underinsured motorist hitting the insured while he is a pedestrian and while the insured is using a substitute or other non-owned car. This coverage was the subject of premiums paid for by the Bursteins. They did not pay a premium for underinsured motor coverage for injury sustained by them while they occupied a regularly used non-owned car.

¶ 11 To require an insurer to cover a use which is subject to an unambiguous policy exclusion, may almost certainly be expected to give rise to an increase in the cost of automobile insurance. This is violative of public policy. This is the result reached by the majority. I am compelled, therefore, to dissent.

¶ 12 POPOVICH and JOHNSON, JJ., join this Dissenting Opinion.

---

17. *See also Frazier v. State Farm Mutual Automobile Ins. Co.*, 445 Pa.Super. 218, 665 A.2d 1 (1995) and *Jeffrey v. Erie Ins. Exchange*, 423 Pa.Super. 483, 621 A.2d 635 (1993)(en banc) (concept of "maximum feasible restoration" no longer exists in Pennsylvania jurisprudence applying the MVFRL).