**PRUDENTIAL PROPERTY AND CASUALTY INSURANCE COMPANY Appellant**

v.

**John McANINLEY Appellee.**

Superior Court of Pennsylvania.

Argued April 24, 2002.

Filed June 24, 2002.

Charles W. Craven, Philadelphia, for appellant.

Andrew E. DiPiero, Philadelphia, for appellee.

Before: DEL SOLE, P.J., TODD and MONTEMURO *, JJ.

MONTEMURO, J.

¶ 1 Appellant, Prudential Property and Casualty Insurance Company, appeals the Order filed October 26, 2001, in the Bucks County Court of Common Pleas, granting summary judgment to Appellee, John McAninley. For the reasons set forth below, we affirm.

¶ 2 The facts underlying this declaratory judgment action are undisputed. On December 2, 1996, Appellee was injured in a motor vehicle accident while operating a Ford Super Diesel pick-up truck in the course and scope of his employment with Waste Management of Delaware Valley. The truck was owned by Waste Management and covered under the company's insurance policy which did not include underinsured motorist (UIM) coverage. Appellee recovered liability benefits from the third party tortfeasor, but the award was insufficient to cover his damages. Therefore, he sought UIM benefits from his personal car insurance policy, issued by Appellant.

---

* Retired Justice assigned to Superior Court.

¶ 3 Appellant denied UIM coverage on two bases: (1) Appellee was not operating a "car," as defined in the policy, at the time of the accident, and (2) the policy specifically excludes insureds from seeking UIM coverage when operating "regularly used non-owned motor vehicles." Consequently, Appellant filed this declaratory judgment action seeking a judicial determination that it has no obligation to provide UIM benefits to Appellee. Both parties subsequently filed summary judgment motions, and by Order filed October 26, 2001, the trial court granted Appellee's motion. This timely appeal follows.

¶ 4 Appellant raises three issues on appeal, all challenging the court's grant of summary judgment to Appellee:

1.  Did the trial court misinterpret the policy's UIM insuring agreement so as to provide coverage when Appellee was not operating a "car" as defined in the policy?

2.  Did the trial court err in striking the policy's "regularly used non-owned vehicle" exclusion as violative of public policy?

3.  Even if this Court finds no error in the first two issues, did the trial court err in not granting summary judgment to Appellant based on the clear and unambiguous language of the policy?

*See* Appellant's Brief at 4. Finding several recent decisions of this Court dispositive, we affirm.

¶ 5 Appellee's personal car insurance policy, issued by Appellant, includes the following UIM coverage:

**OUR OBLIGATIONS TO YOU (PART 5)**

**UNDERINSURED    MOTORISTS COVERAGE**

If **you** have this coverage (see the Declarations), **we** will pay up to our limit of liability for **bodily injury** that is covered under this part when an insured (whether or not occupying a **car**) is struck by an underinsured **motor vehicle**. **Our** payment is based on the amount that an insured is legally entitled to recover for **bodily injury** but could not collect from the owner or driver of the underinsured **motor vehicle** because:

●   **THE  OWNER  OR  DRIVER  IS UNDERINSURED**

The owner or driver responsible for the accident has liability insurance or a liability bond with limits that are less than the full amount the insured is legally entitled to recover as damages.

No payment will be made under this part until liability insurance and bonds of all responsible **motor vehicles** are exhausted by payment of settlement or judgement. This is a coverage of the last resort.

**YOUR    OBLIGATIONS    TO    U.S. (PART 5)**

The following provisions apply in addition to any duties listed in the **GENERAL PROVISIONS** section:

**ACTION AGAINST US**

No one insured under this part may take any legal action against **us** until all obligations under this policy have been fulfilled.

**WHAT    CARS    ARE    COVERED (PART 5)**

**CARS DESCRIBED ON THE DECLARATIONS**

This part covers **cars** for which a premium charge for this coverage is shown on the Declarations.

**REPLACEMENTS CARS**

If **you** acquire ownership of a **car** to replace a **car** covered under this part, the newly acquired **car** has the same coverage as the old **car**. **You** must notify **us** of the replacement within 30

days after you acquire the **car**, for coverage to continue after 30 days.

## ADDITIONAL CARS

If **you** acquire ownership of another **car** in addition to those described as covered under this part, this part covers the new **car** for the first 30 days. The new **car** has the same coverage as any of **your** other **cars** insured with **us**. All **your** other **cars** must be insured with **us** for this part to cover the additional **car**. **You** must let **us** know within 30 days after **you** acquire ownership of the new **car** that **you** want it insured under this part, for coverage to continue after 30 days.

## SUBSTITUTE CARS

If a **car** covered under this part breaks down, is being serviced or repaired, or is stolen or destroyed, **we** will cover a **car** you borrow temporarily (with the owner's permission) while **your car** is being repaired or replaced. This **car** cannot be owned by **you** or a **household resident**. The substitute **car** has the same coverage as the **car** that is out of service.

## OTHER NON–OWNED CARS

In addition to **SUBSTITUTE CARS, we** will cover a **non-owned car**. The owner must give permission to use it. The **non-owned car** must be used in the way intended by the owner. This includes a rented **car** for a period of up to 30 consecutive days. The **non-owned car** has the same coverage as any one of **your cars** insured with **us**.

## WHO IS INSURED (PART 5)

## IN YOUR CAR (INCLUDES A SUBSTITUTE CAR)

**You** and a **resident relative** are insured while using **your car** or a substitute **car** covered under this part.

Other people are insured while using **your car** or a substitute **car** covered under this part if **you** give them permission to use it. They must use the **car** in the way **you** intended.

## IN A NON–OWNED CAR

**You** and a **resident relative** are insured while using a **non-owned car**. The owner must give permission to use it. It must be used in the way intended by the owner.

## HIT BY A MOTOR VEHICLE

**You** and a **resident relative** are insured if hit by an underinsured **motor vehicle** while a pedestrian.

(Insurance Policy, Part 5, at 7–8) (emphasis in original). The policy also specifically precludes UIM coverage in certain situations, including:

## REGULARLY USED NON–OWNED MOTOR VEHICLES

**We** will not pay for **bodily injury** to **you** or a **household resident** using a **non-owned motor vehicle** not insured under this part, regularly used by **you** or a **household resident**.

(*Id.* at 8) (emphasis in original). Moreover, a "car" is defined as

a private passenger automobile, station wagon, jeep-type, or van with four wheels which is designed for use mainly on public roads. A pick-up truck with four or six wheels and a load capacity of one ton or less is also a **car**.

(Insurance Policy, at 2) (emphasis in original).

¶ 6 The trial court agreed with Appellant that the vehicle Appellee was driving at the time of the accident, a diesel pick-up truck with a load capacity in excess of one ton, was not a "car" as defined in the policy.[1] Nevertheless, the court found

---

1. Rather, the diesel truck would be categorized as a "motor vehicle."

that Appellee was entitled to UIM benefits based on the language of the insuring agreement. Specifically, the court interpreted the phrase "whether or not occupying a car" in the introductory paragraph of the UIM coverage to mean that the insured is entitled to UIM benefits regardless of the vehicle he is driving at the time of the accident. In addition, relying on this Court's decision in *Prudential Prop. & Cas. Ins. Co. v. Gisler*, 764 A.2d 1111 (Pa.Super.2000), the trial court concluded that the "regularly used non-owned motor vehicles" exception is void as against public policy. Accordingly, the court entered summary judgment for Appellee.

¶ 7 "Whether a particular loss is within the coverage of an insurance policy is a question of law which may be decided on a motion for summary judgment in a declaratory judgment action." *Lebanon Coach Co. v. Carolina Cas. Ins.*, 450 Pa.Super. 1, 675 A.2d 279, 283 (1996), *appeal denied*, 546 Pa. 695, 687 A.2d 378 (1997). Our review of such an order is plenary, *id.* at 282, and begins with the policy language itself. *Mellon Bank v. National Union Ins. Co.*, 768 A.2d 865, 869 (Pa.Super.2001). We must "ascertain the intent of the parties as manifested by the language of the written agreement." *Travelers Cas. & Sur. Co. v. Castegnaro*, 565 Pa. 246, 772 A.2d 456, 459 (2001).

As with any contract, we read an insurance policy in its entirety to determine intent, and must construe words "in their natural, plain and ordinary sense." We give effect to language which is clear and unambiguous. Contractual terms are deemed ambiguous if they are susceptible of more than one reasonable interpretation when applied to a particular set of facts. We will not "distort the meaning of the language or resort to a strained contrivance in order to find an ambiguity."

*Mellon Bank, supra* at 869 (internal citations omitted).

¶ 8 Appellant first contends that the trial court erred in construing the policy's UIM insuring agreement so as to include coverage under the facts presented here. As set forth *supra*, the policy provides UIM benefits "when an insured (whether or not occupying a **car**) is struck by an underinsured **motor vehicle**." (Insurance Policy, Part 5, at 7) (emphasis in original). The trial court interpreted the phrase "whether or not occupying a **car**" to "indicate[ ] that it is not essential for the purpose of this coverage that the insured be occupying a car as strictly defined in the definition section of the policy but rather may be in any vehicle at all." (Trial Ct. Op. at 5). Appellant argues, however, that the trial court's interpretation ignores the language of the policy as a whole which clearly limits UIM coverage to injuries sustained when the insured is an operator or passenger of a "car." Because the diesel truck Appellee was operating at the time of the accident was not a "car," Appellant contends that it is not obligated to provide UIM benefits.

¶ 9 We disagree. Certainly, the phrase "whether or not occupying a **car**" creates an ambiguity subject to two reasonable interpretations. As the trial court concluded, the phrase could be interpreted to mean that UIM benefits are available to the insured regardless of the type of vehicle he is operating at the time of the

**MOTOR VEHICLE**
A **motor vehicle** is a self-propelled land vehicle which is required to be registered and licensed by the laws of **your** state for use on public roads.

(Insurance Policy, at 2) (emphasis in original).

accident. Moreover, as Appellant argued in the trial court, but does not pursue on appeal, the phrase could be interpreted to mean that UIM benefits are available both when an insured is a driver or passenger of a car, and when the insured is simply a pedestrian. An ambiguous provision of an insurance policy must be construed in favor of the insured and against the insurer. *Standard Venetian Blind Co. v. American Empire Ins. Co.*, 503 Pa. 300, 469 A.2d 563, 566 (1983). Therefore, we find no error in the trial court's interpretation of the policy language. Moreover, as the court explained in its Opinion, the policy clearly provides UIM benefits to an insured when he is injured while a pedestrian in a later section of the UIM coverage part. *See* Insurance Policy, Part 5, at 8 ("**You** and a **resident relative** are insured if hit by an underinsured **motor vehicle** while a pedestrian."). Thus, "when the policy wants to make reference to pedestrian status it does so in clear and unambiguous terms." (Trial Ct. Op. at 5).

¶ 10 However, Appellant argues that regardless of our interpretation of that particular phrase, the UIM coverage language refers only to cars, and not to other motor vehicles. *See* Insurance Policy, Part 5. Therefore, Appellant contends that "the lower court's analysis inexcusably lifts a conditional phrase from its limitations and gives that phrase an independent force which completely guts the car insurance policy." (Appellant's Brief at 19). However, in a recent panel decision of this Court, *Prudential Prop. & Cas. Ins. Co. v. Ziatyk*, 793 A.2d 965 (Pa.Super.2002), we concluded that policy language limiting UIM coverage to "cars" was contrary to the mandate of the Motor Vehicle Financial Responsibility Law ("MVFRL").

¶ 11 In *Ziatyk*, Mrs. Ziatyk was injured while riding as a passenger in a rental truck. She sought UIM benefits under her husband's personal car insurance policy. However, the insurance company, Prudential, the same company involved here, denied benefits because Mrs. Ziatyk was not riding in a "car," as defined in the policy, at the time of the accident. In the subsequent declaratory judgment action, the trial court agreed, and determined that Mrs. Ziatyk was not entitled to UIM benefits.

¶ 12 However, this Court reversed on appeal, finding that the wording of the policy violated the clear mandate of MVFRL.[2] The panel explained that the MVFRL requires insurers to offer to all insureds UIM coverage which "provide[s] protection for persons who suffer injury arising out of the maintenance or use of a **motor vehicle** and are legally entitled to recover damages therefor from owners or operators of underinsured motor vehicles." 75 Pa.C.S.A. § 1731(c) (emphasis added). Thus, the Court concluded that "Prudential's attempted restriction of the benefits required by law to be offered to Pennsylvania insureds is void as directly contrary to the requirements of Section 1731 of the Motor Vehicle Financial Responsibility Law." *Ziatyk, supra* at 968.

¶ 13 The *Ziatyk* decision is dispositive here. Like the rental truck in which Mrs. Ziatyk was a passenger, the diesel truck Appellee was operating in the present case clearly does not qualify as a "car." However, the MVFRL requires insurers to provide UIM coverage to protect insureds,

**2.** We note that Appellant cites the *Ziatyk* trial court decision in its brief in support of its contention that "the Super Diesel truck and the bodily injuries which McAninley sustained in the regular use of that vehicle are plainly not covered." (Appellant's Brief at 14). This Court's Opinion reversing that decision was rendered after Appellant had filed its brief. We note that Appellant has petitioned the Supreme Court for review in *Ziatyk*.

who choose that coverage, from injuries arising out of the use of **any** motor vehicle. Therefore, pursuant to *Ziatyk*, once Appellee opted to pay a premium for UIM coverage, he was entitled to benefits regardless of the vehicle he was operating at the time of the accident.

¶ 14 In its Reply Brief, Appellant urges us to decline to follow *Ziatyk*, which it claims "misconstrues section 1731 of the MVFRL, undermines the public policy goal of the MVFRL, and contravenes the controlling decisions of the Supreme Court and of your Honorable Court." (Appellant's Reply Brief at 1). However, Appellant ignores the long standing principle that a panel decision of this Court remains binding precedent unless and until it has been overturned by the Pennsylvania Supreme Court. *Marks v. Nationwide Ins. Co.*, 762 A.2d 1098, 1101 (Pa.Super.2000), *appeal denied*, 567 Pa. 751, 788 A.2d 381, 2001 Pa. Lexis 2062 (Pa. September 24, 2001). Indeed, this principle applies even when, as here, there is a petition for allowance of appeal from the previous decision pending before our Supreme Court. *Sorber v. American Motorists Ins. Co.*, 451 Pa.Super. 507, 680 A.2d 881, 882 (1996). Because *Ziatyk* is controlling, Appellant's argument fails.

¶ 15 Next, Appellant contends that the trial court erred in striking the "regularly used non-owned motor vehicle" exclusion as violative of public policy. Again, however, we find no error.

¶ 16 The trial court relied exclusively on two recent decisions of this Court, *Burstein v. Prudential Prop. & Cas. Ins. Co.*, 742 A.2d 684 (Pa.Super.1999) (*en banc*), *appeal granted*, 563 Pa. 670, 759 A.2d 919 (2000), and *Gisler, supra.* The facts in both cases are strikingly similar to those presented *sub judice*.

¶ 17 In *Burstein*, at the time of the accident, the Bursteins were driving a car provided to Mrs. Burstein by her employer; she paid a weekly fee permitting her to drive it for personal use as well. The employer did not opt for UIM coverage, and did not give Mrs. Burstein the option to purchase it herself. Therefore, when the tortfeasor's insurance proved insufficient to compensate the Bursteins for their damages, they sought UIM benefits under their personal policy. Coverage was denied, however, under a "regularly used non-owned car" exclusion.[3] The trial court found that the provision violated public policy, and a divided *en banc* panel of this Court affirmed.

¶ 18 In the plurality Opinion, three judges, led by Judge Schiller, concluded that the exclusion violates three broad public policies, specifically: (1) the MVFRL's purpose of establishing a liberal compensation scheme of UIM protection so as to provide the greatest possible coverage to injured claimants; (2) the public's interest in having insurance companies provide UIM coverage; and (3) the notion that UIM coverage is first-party coverage which follows the insured, not the vehicle. *See Id.* at 687–88.

¶ 19 In a Concurring and Dissenting Opinion, Judge McEwen, joined by two other judges, agreed that the exclusion was inapplicable under the facts presented, but did not agree that UIM coverage necessarily follows the insured. Rather, he explained that the "regularly used" vehicle exclusion was designed to prevent abuse by households with multiple vehicles, that is, purchasing UIM benefits under one

---

**3.** The exclusion is identical to the one in the present case, except that it precluded UIM coverage when an insured regularly used a non-owned "car," rather than the more encompassing "motor vehicle" exclusion here. *See Burstein, supra* at 686 n. 3.

policy but attempting to claim coverage for other vehicles not insured under that policy. *Id.* at 693 (McEwen, P.J., concurring in part and dissenting in part). He concluded that "[t]his risk, of course, is not implicated under the specific facts of this case." *Id.*

¶ 20 As a plurality Opinion, *Burstein* is not binding precedent. However, in *Gisler, supra,* this Court found the *Burstein* plurality persuasive, and held that a similar "regularly used non-owned motor vehicle" exclusion was void as against public policy. The facts in *Gisler* are almost identical to those presented here. There, the insured was in an accident while operating his patrol car in the course and scope of his employment as a police officer. He sought UIM benefits from his personal car insurance policy when the compensation he received from the tortfeasor proved insufficient. The insurance company, again Prudential, denied coverage based on the "regularly used non-owned motor vehicle" exclusion, and filed a declaratory judgment action to determine the parties' rights. As here, the trial court found the exclusion void as against public policy.

¶ 21 On appeal, we reviewed the plurality Opinion in *Burstein,* and found it persuasive. Specifically, we noted that, although at the time of the accident the insured was driving a vehicle owned by his employer, he had purchased UIM coverage under his personal automobile policy, "thereby complying with the letter and the spirit of the MVFRL." *Gisler, supra* at 1114. The same is true here.

¶ 22 Appellant, however, argues that *Gisler* "cannot be regarded as the controlling law of the Commonwealth" since it relied solely on the plurality Opinion in *Burstein* for support, which Appellant maintains was "superceded" when the Su-

preme Court granted Appellant's petition for allocatur and application for supersedeas in that case. (Appellant's Brief at 23, 34). Appellant is simply incorrect. As already noted, a majority Opinion of this Court remains binding precedent unless and until it is has been overturned by our Supreme Court. *Sorber, supra* at 882. This is true even when the Supreme Court has *granted* a petition for allowance of appeal in the previous case. *McClung v. Breneman,* 700 A.2d 495, 496 n. 3 (Pa.Super.1997). *Burstein* has no precedential authority because it is a plurality decision, not because the Supreme Court has decided to accept an appeal in that case. However, *Gisler,* a majority decision (McEwen, J., dissenting), is binding precedent in this Court. Therefore, unless it is overturned by the Supreme Court,[4] it remains the "controlling law of the Commonwealth."

¶ 23 Appellant's third issue is simply a reiteration of its first, that is, because the language in the UIM coverage part refers only to "cars," Appellee cannot recover when he was not driving a "car" at the time of the accident. As we discussed *supra,* this argument was rejected in *Ziatyk,* which we find indistinguishable from the case *sub judice.*

¶ 24 Order affirmed.

---

4. We note that a petition for allowance of appeal was filed in the *Gisler* case, but the Supreme Court has reserved disposition pending its decision in *Burstein.*