590 A.2d 281

**Marlene M. BATEMAN, Administratrix of the Estate of William J. Bateman, Jr., Appellant,**

**v.**

**MOTORISTS MUTUAL INSURANCE CO., Appellee.**

Supreme Court of Pennsylvania.

Argued Sept. 24, 1990.

Decided April 23, 1991.

Kathleen B. Larchuk, Clinton, for appellant.

David M. McQuiston, Thomson, Rhodes & Cowie, Pittsburgh, for appellee.

Before NIX, C.J., and LARSEN, FLAHERTY, McDERMOTT, ZAPPALA, PAPADAKOS and CAPPY, JJ.

## OPINION OF THE COURT

PAPADAKOS, Justice.

Appellant, Marlene M. Bateman, Administratrix of the Estate of William J. Bateman, Jr., has appealed to us from the order of the Superior Court which affirmed the judgment of the Court of Common Pleas of Allegheny County. This judgment, in turn, affirmed an arbitration award entered in favor of the Motorists Mutual Insurance Company (Appellee) and dismissed Appellant's claim for under-insurance benefits.

Appellant's decedent died as a result of injuries sustained in a two-car collision on November 19, 1983. Appellant commenced an action for damages against Ronald Demsher, the operator of the other automobile, the Ford Motor Company on various theories of strict liability and products liability, and Ronald Lenhart, a tavern keeper, t/d/b/a "The Wheel," for dram shop liability.

Appellant eventually settled and discontinued the actions against all of the tortfeasors and Appellee approved these settlements. Appellant settled with Ronald Lenhart for $15,000, an amount which represented the limits of liability of his automobile insurance policy. Ronald Demsher settled with Appellant for $33,334. This represented two-thirds of the limits of liability of his policy. The other one-third of the policy limits were given to the passenger in decedent's vehicle. Ford Motor Company also settled with Appellant for $30,000, an amount which did not exhaust the limits of liability of its self-insurance.

While the total amounts recovered from these three tortfeasors was $78,334, this amount was much less than the decedent's total damages which was stipulated to be in

excess of $128,334. Accordingly, Appellant looked to decedent's insurance policy for under-insurance coverage. At the time of decedent's fatal accident, he carried $50,000 in under-insurance coverage with Appellee and Appellant applied to Appellee for the full amount of under-insurance coverage. Appellee refused to pay and the arbitration provisions of the policy were invoked.

At the arbitration hearing of September 17, 1987, Appellee argued that it did not have to respond with under-insurance coverage for two reasons. First, Appellee argued that since Appellant did not exhaust the full limits of liability of Ford Motor Company, it should not be able to look to the under-insurance provisions of decedent's policy. This argument was rejected because Appellee approved the settlement with Ford and could not now be heard to complain. This determination is not before us for review.

Secondly, Appellee argued that the settlements that Appellant recovered must be subtracted from the limits of liability ($50,000) pursuant to the terms of the policy. Two of the arbitrators agreed and concluded that the policy, as written, required that the amounts recovered had to be set-off from the limits of liability of the policy and not subtracted from the total amount of damages sustained by Appellant's decedent. In other words, because the settlements ($78,334) exceeded the limits of liability of under-insurance coverage ($50,000), Appellant was owed nothing. The third arbitrator dissented and ruled that the settlements should be subtracted from the total damages sustained ($128,334 less 78,334) leaving $50,000 in unpaid damages which the under-insurance could cover.

Appellant's additional argument that the only settlements which should be used to reduce Appellee's under-insurance liability was the settlement from the under-insured driver (Lenhart) was unpersuasive. Because of the policy language, the arbitrators held that all payments were to be used to reduce the limits of liability, not just payments from operators of underinsured motorists.

When the arbitrators entered an award against Appellant, she filed a Petition to Vacate the award in the Court of Common Pleas of Allegheny County.

The trial court denied the Petition to Vacate and granted Appellee's Petition to Confirm and entered judgment in favor of Appellee. The Superior Court affirmed. *Bateman v. Motorists' Mutual Insurance Co.*, 377 Pa.Superior Ct. 400, 547 A.2d 428 (1988).

We granted Appellant's petition for allowance of appeal to determine whether the set-off clause contained in this insurance policy was improperly interpreted by the arbitrators and the lower courts. Because we find that the clause was improperly interpreted we now reverse.

At the outset, we note that when reviewing the decision of common law arbitrators, we reverse only for fraud, misconduct, or some type of irregularity which causes an unjust, inequitable or unconscionable award. *Brennan v. General Accident Fire and Life Assurance Corporation, LTD.*, 524 Pa. 542, 574 A.2d 580 (1990); *Wingate Construction Co. v. Schwiezer Dipple, Inc.*, 419 Pa. 74, 213 A.2d 275 (1965).

The principles governing the interpretation of a contract of insurance are also well settled. Review is aimed at ascertaining the intent of the parties as manifested by the language of the written instrument. Where the provision of the policy is ambiguous, the policy provision is construed in favor of the insured and against the insurer, the drafter of the instrument. If the policy language is clear and unambiguous, we give effect to the language of the contract. *Standard Venetian Blind Co. v. American Empire Insurance Co.*, 503 Pa. 300, 469 A.2d 563 (1983).

The policy provision at the heart of this case is as follows: "Any amounts otherwise payable for damages under this coverage shall be reduced by all sums paid ... on behalf of persons or organizations who may be responsible."

Appellee, the drafter of this policy, argues that the phrase "Any amounts otherwise payable for damages under this coverage ..." refers to the limits of liability of its policy so that any sums that Appellant recovers from other persons reduces the amount available to Appellant under the under-insurance provision. Since Appellant recovered at least $50,000.00 from other parties, the limits of under-insurance coverage must be reduced to zero and her claim for under-insurance rejected.

Appellee, however, neglects to take into account the word "otherwise" which has been inserted into the policy and its effect upon the meaning of this phrase. The word "otherwise" is defined as "in a different way or manner" and when inserted into this phrase reads, "Any amounts payable in a different way or manner for damages under this coverage ...". The problem generated by this word when placed in this phrase is that under this policy the only damages payable are for under-insurance payments and there are no other payments payable in a different way or manner which are to be reduced by sums paid by others. Thus, the inclusion into this phrase of the word "otherwise" makes Appellee's interpretation that the clause refers to its under-insurance limits of liability an impossible one and renders the language ambiguous.

Appellant, on the other hand, argues that the *damages otherwise payable* referred to are her decedent's total damages sustained (stipulated to be in excess of $128,334) minus the $78,334 recovered from other parties which must be deducted from her damages leaving $50,000 as damages which Appellee as under-insurer must pay.

Since the provision of the policy is ambiguous it must be construed as Appellant suggests. Of particular significance is that the drafter of this policy did not simplify matters by substituting the phrase "limits of liability" for the disputed text as was done by the drafters of the policy in the case of *Votedian v. General Accident Fire and Life Assurance Co.*, 330 Pa.Superior Ct. 13, 478 A.2d 1324 (1984).

In *Votedian*, the injured party sustained damages in the amount of $75,000 and received the policy limits from the tortfeasor ($15,000). He thereafter sought to collect the balance of $60,000 from his under-insurer. The insurance company invoked the provisions of its policy which required that its *limit of liability*, in that case $30,000, be reduced by all sums paid by persons who were responsible to him. Because the injured party recovered $15,000, this reduced the amount of under-insurance liability to $15,000 and the insurance company tendered its check to Votedian in that amount. The Superior Court affirmed the insurer's interpretation of that policy because the document drafter clearly stated what its contractual obligations were in the event that its insured recovered sums from others who were responsible for his injuries.

In contrast to *Votedian*, the drafter of this instrument makes it impossible for the reader to determine whether the insurer would deduct payments from the under-insurance limits or from the total damages suffered. The drafter could have made its intent clear, however, by simply stating that the limits of its liability would be reduced by all payments received as was done in *Votedian*. Since there is an ambiguity in the meaning of this policy language, it must be interpreted against the drafter of the policy and in favor of Appellant.

Under these circumstances, it would be unjust for the decision of the arbiters to be affirmed and, therefore, it must be reversed.

Because of our resolution of this issue it is unnecessary for us to consider Appellant's second argument. The opinion and order of the Superior Court are reversed and the matter is remanded to the Court of Common Pleas of Allegheny County with instructions that judgment be entered in the amount of $50,000 in favor of Appellant and against Appellee.

It is so ordered.

248

NIX, C.J., did not participate in the consideration or decision of this matter.

McDERMOTT, J., files a dissenting opinion.

McDERMOTT, Justice, dissenting.

The majority begins its analysis by stating that a reversal of a decision made by common law arbitrators will only occur where there is fraud, misconduct, or some type of irregularity which causes an unjust, inequitable or unconscionable award. It then bypasses the fraud, misconduct and irregularity requirements and concludes that because the contract was ambiguous, it should have been interpreted against the drafter and in favor of the appellant. Although I would agree with the result reached here had we been called upon to review an award rendered pursuant to the Uniform Arbitration Act, 42 Pa.C.S. § 7341, our powers of review are severely limited when the award is made by a common law arbitration panel. To ignore the difference between the two, as was done here, serves to emasculate the power of common law arbitration and render the distinction between the two types of panels moot. Thus, I dissent.