632 A.2d 1345

GUTTMAN OIL COMPANY, a Corporation, Mon River Towing Inc., a Corporation and Guttman Realty Company, a Corporation,

v.

PENNSYLVANIA INSURANCE GUARANTY ASSOCIATION, Appellant.

Superior Court of Pennsylvania.

Argued Aug. 31, 1993.

Filed Oct. 27, 1993.

John W. Jordan, IV, Pittsburgh, for appellant.

Mark D. Shepard, Pittsburgh, for appellees.

Before ROWLEY, President Judge, and WIEAND and CIRILLO, JJ.

CIRILLO, Judge:

This is an appeal from a judgment entered by the Court of Common Pleas of Washington County denying appellant Pennsylvania Insurance Guaranty Association's (PIGA) motion for post-trial relief. We affirm in part and reverse in part.

This case was before the trial court on a Stipulation of Facts between appellant PIGA [1] and appellees Guttman Oil Company (Guttman Oil), Mon River Towing, Inc. (Mon River), and Guttman Realty Company (Guttman Realty). On November 5, 1985, extensive flooding occurred along the Monongahela River causing damages to the personal and real property owned by Guttman Oil, Mon River, Guttman Welding Supply Company [2] and Guttman Realty. At the time of the flooding, Guttman Oil, Mon River and Guttman Realty were among the fifteen named insureds under an all-risk property damage policy issued by Mission National Insurance Company (Mission Insurance). The policy was effective from December 31, 1984 through December 31, 1985 and limited liability to $7,500,000.00.

After the flooding, the California Department of Insurance placed Mission Insurance into liquidation. Guttman Oil, Mon River, Guttman Welding and Guttman Realty filed claims with Mission's liquidator in the amounts of $291,987.00, $184,651.00, $46,500.00, and $89,958.00, respectively. Since the damaged properties were located within the Commonwealth of Pennsylvania, the California Department of Insurance forwarded each claim to PIGA. 40 Pa.S.A. § 1701.101 *et seq.*

PIGA treated the claims as "one covered claim" under the Act and the policy. As a result, the insureds filed a joint

1. Appellant PIGA is an entity created by the legislature of this Commonwealth pursuant to the Pennsylvania Insurance Guaranty Association Act (the Act). 40 Pa.S.A. § 1701.101 *et seq.*

2. The flooding also caused damage to property owned by Guttman Welding Supply Company. Thereafter, Guttman Welding sold its stock to another welding company and assigned all of its damage claims to Guttman Realty.

complaint for declaratory relief against PIGA seeking a declaration that each claim constituted a separate covered claim under the policy and Act. The trial court ruled in favor of the insureds and this court affirmed on appeal.

Thereafter, PIGA paid each of the four covered claims but deducted $25,000.00 from each payment as deductibles. The insureds objected to PIGA's interpretation of the deductible provision asserting that PIGA was entitled to deduct only a single deductible amount of $25,000.00. Thus, the insureds filed for declaratory judgment and for the recovery of money still owed under the policy.[3] The Honorable Thomas J. Terputac rendered judgment in favor of insureds in the amount of $75,000.00 plus six percent (6%) interest from September 1, 1987, to the date of entry of judgment or whenever paid.

PIGA presents three issues for our consideration:

(1) Does a one year limitation of suit provision in an insurance policy bar a breach of contract action filed more than one year after the plaintiff knows of the occurrence giving rise to the claim, the dollar amount thereof and the identity of the entity against which the claim should be asserted;

(2) Is the award of interest from September 1, 1987, inconsistent with the determination that this action is not time barred; and

(3) Does the Missions National Policy, when interpreted in accordance with the prior decisions concerning the same policy, provide a separate $25,000.00 deductible for each of the four insured companies.

 The role of an appellate court reviewing the trial court's final judgment is to determine whether the findings of the trial court are supported by competent evidence and whether the trial court committed error in the application of law. The findings of the trial judge in a non-jury case must be given the same weight and effect on appeal as a verdict of a jury and will not be disturbed on appeal absent error of law or abuse of discretion. *Stahli v. Wittman*, 412 Pa.Super. 281,

---

**3.** The trial judge dismissed the action for declaratory judgment since the insureds were seeking monetary relief.

283, 603 A.2d 583, 584 (1992); *see also Reuter v. Citizens & Northern Bank,* 410 Pa.Super. 199, 599 A.2d 673 (1991); *Porter v. Kalas,* 409 Pa.Super. 159, 597 A.2d 709 (1991). When this court reviews the findings of the trial judge, the evidence is viewed in the light most favorable to the victorious party below and all the evidence and proper inferences favorable to that party must be taken as true and all unfavorable inferences rejected. *Short v. Metropolitan Life Ins. Co.,* 339 Pa.Super. 124, 129, 488 A.2d 341, 343 (1985).

 This court has held that the proper focus regarding issues of coverage under insurance contracts is the reasonable expectation of the insured. *Dibble v. Security of America Life Ins. Co.,* 404 Pa.Super. 205, 210, 590 A.2d 352, 354 (1991). In determining the reasonable expectations of the insured, courts must examine the totality of the insurance transaction involved. *Id.* However, while reasonable expectations of the insured are the focal points in interpreting the contract language of insurance policies, *see Collister v. Nationwide Life Insurance Co.,* 479 Pa. 579, 388 A.2d 1346 (1978) and *Winters v. Erie Insurance Group,* 367 Pa.Super. 253, 532 A.2d 885 (1987), an insured may not complain that his or her reasonable expectations were frustrated by policy limitations which are clear and unambiguous. *Bateman v. Motorists Mut. Ins. Co.,* 527 Pa. 241, 245, 590 A.2d 281, 283 (1991); *Neil v. Allstate Insurance Co.,* 379 Pa.Super. 299, 549 A.2d 1304 (1988). However, where a provision of an insurance policy is ambiguous, the provision is construed in favor of the insured and against the insurer. *Bateman,* 527 Pa. at 245, 590 A.2d at 283.

 Pursuant to the laws of this Commonwealth, PIGA is deemed to replace an insolvent insurer, with all of that insurer's rights, duties and obligations. 40 Pa.S.A. § 1701.-201(b)(1)(ii); *see Donegal Mut. Ins. Co. v. Long,* 528 Pa. 295, 597 A.2d 1124 (1991). Additionally, PIGA's own limitations on liability apply, rather than those of the insolvent insurer. *Id.* at 301, 597 A.2d at 1127; 40 Pa.S.A. § 1701.201(b)(1)(i) (such obligation shall include only that amount of each covered claim which is in excess of one hundred dollars ($100), and is less

than three hundred thousand dollars ($300,000)). In this case, PIGA assumed Mission Insurance's rights, duties and obligations under the Mission policy issued to the insureds.

## I. *"Suit" Provision*

The "Suit" provision in the policy provides, in part:

No suit, action or proceeding for the recovery of any claim under this policy shall be sustainable in any court of law or equity unless the same be commenced *within twelve (12) months next after discovery by the Insured of the occurrence which gives rise to the claim.*

(emphasis added). PIGA contends that the insureds' present claims for the payment of improperly withheld deductibles are barred by the above-quoted "suit" provision since the insureds could have, or should have, included this claim in their 1988 declaratory judgment action. Although clauses setting time limits on the commencement of suits are generally valid and enforceable, *General State Authority v. Planet Ins. Co.*, 464 Pa. 162, 346 A.2d 265 (1975), we disagree with PIGA's interpretation of the suit provision in the instant case.

Under the suit provision, the twelve month limitation does not begin to run until "after discovery by the Insured of the occurrence which gives rise to the claim." PIGA paid the claims, minus $25,000.00 in deductibles for each, *after* this court affirmed the trial court's determination that each claim was a separate covered claim under the policy. Therefore, as the trial court correctly found, the occurrence which gave rise to the insureds' claim in this action was PIGA's deduction of approximately $100,000.00 from payment in 1990. There is no evidence in the record to indicate that the insureds could have been aware, or could have anticipated, any breach until such time. In addition, any ambiguity in the suit provision must be construed against PIGA, as drafter. *Bateman, supra*. We hold, therefore, that the suit was filed within the twelve month limitation in the policy.

### II. *Propriety of A Single Deductible*

▮▮▮ The trial court held that "one $25,000[.00] deductible applies to all flood claims within the 72-hour period." Conversely, PIGA now contends that it is entitled to subtract a $25,000.00 deductible from the amount due to *each* claimant. After reviewing the policy and policy endorsements, we find that the trial court misinterpreted the plain language of the policy.

The trial court looked to the following policy provisions in rendering its decision:

3. *DEDUCTIBLE*

As respects real and personal property, all claims for loss, damage or expense arising out of any one occurrence shall be adjusted as one claim, *and from the amount of each adjusted claim there shall be deducted* the sum of $2,500[.00] *except that a $25,000.00 per occurrence applies to claims arising out of claims from earthquake and/or flood.* (emphasis added).

11. C. *Flood Clause*

With respect to the peril of flood, any and all losses from this cause within a seventy-two (72) hour period shall be deemed to be one loss insofar as the limit of liability and deductible provisions of this policy are concerned.

*ENDORSEMENT DATED JANUARY 9, 1985*

[I]t is hereby understood and agreed that from *each* adjusted loss per catastrophe, the sum of $2,500[.00] shall be deducted ... except the perils of flood and earthquake where a $25,000[.00] deductible shall apply. (emphasis added).

The trial court's decision to permit a single deductible runs contrary to its earlier determination that each of the insureds' claims are separate covered claims under the policy. It seems untenable to argue, on the one hand, that each insured may recover separately under the policy and then, on the other, that all four claims are subject to a single $25,000.00 deductible.

This interpretation also contradicts the plain meaning of the policy language. While it is unclear whether the policy's $7,500,000.00 limit of liability applies to each claim or to claims in the aggregate, the deductible provision is clear in that there is a deductible of $25,000.00 *"per occurrence"* for damages resulting from earthquake or flood. For claims resulting from flooding, "per occurrence" is defined in section 11(C) as "any and all losses from this cause [flooding] within a seventy-two (72) hour period shall be deemed *one loss....*" (emphasis added). This provision defines the limits of liability for each loss or occurrence and the applicable deductible as to *each* claimant. We find, therefore, that the reasonable expectations of the parties and the plain meaning of the terms require a $25,000.00 deductible as to each and every claim for flood relief. *Bateman, supra.*

### III. *Interest*

We affirm the trial court's determination that the insureds were not barred from filing suit pursuant to the policy's twelve month service of suit limitation. However, because we find that PIGA properly withheld a $25,000.00 deductible as to each claimant, the propriety of the interest awarded to the insureds is moot. We, therefore, reverse the judgment in favor appellees/insureds and against PIGA in the amount of $75,000.00 plus interest.

Judgment affirmed in part and reversed in part. Jurisdiction relinquished.