**SHELBY CASUALTY INSURANCE COMPANY, Plaintiff,**

v.

**Frank STATHAM and Alma Statham, Defendants.**

No. Civ.A. 01–CV–154.

United States District Court, E.D. Pennsylvania.

Aug. 24, 2001.

---

Allan C. Molotsky, Philadelphia, PA, for Plaintiff.

Stephen W. Cody, Lancaster, PA, for Defendants.

## OPINION AND ORDER

VAN ANTWERPEN, District Judge.

### I. Introduction

Plaintiff Shelby Casualty Insurance Company, a corporation organized under the laws of the State of Illinois, having its principal place of business in Alabama, has brought this declaratory judgment action against Defendants Frank Statham and Alma Statham, citizens of the Commonwealth of Pennsylvania, seeking a determination that it is not bound, under the terms of an insurance policy issued to Defendants, to pay underinsured motorist benefits to Defendants to compensate for injuries suffered as a result of a motorcycle accident. The amount in controversy is in excess of $100,000. We have jurisdiction pursuant to 28 U.S.C. § 1332. Before the court are cross-motions for summary judgment. For the reasons explained herein, we hold that the Plaintiff's motion will be granted and that the Defendants' motion will be denied because neither the terms of the policy nor public policy require coverage in the instant case.

### II. Standard of Review

The court shall render summary judgment only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). An issue is "genuine" only if there is a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) ("Anderson I"). A factual dispute is "material" only if it might affect the outcome of the suit under governing law. See id. at 248, 106 S.Ct. 2505. All inferences must be drawn and all doubts resolved in favor of the non-moving party. See United States v. Diebold, Inc., 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962); Gans v. Mundy, 762 F.2d 338, 341 (3d Cir.1985).

On motion for summary judgment, the moving party bears the initial burden of identifying those portions of the record that it believes demonstrates the absence

of material fact. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). To defeat summary judgment, the non-moving party must respond with facts of record that contradict the facts identified by the movant and may not rest on mere denials. *See id.* at 321 n. 3, 106 S.Ct. 2548 (quoting Fed.R.Civ.P. 56(e)); *see also First Nat'l Bank of Pa. v. Lincoln Nat'l Life Ins. Co.,* 824 F.2d 277, 282 (3d Cir.1987). The non-moving party must demonstrate the existence of evidence that would support a jury finding in its favor. *See Anderson I,* 477 U.S. at 249, 106 S.Ct. 2505.

## III. Factual Background[1]

Shelby Casualty Insurance Company issued a personal automobile policy of insurance to Frank Statham and Alma Statham covering two motor vehicles. This policy was in effect at all relevant times. The coverage included underinsured motorist ("UIM") coverage with limits of $100,000 per person/$300,000 per accident with stacking.[2]

On or about May 30, 2000, Frank Statham was operating a motorcycle in E. Donegal, PA when a motor vehicle driven by Peter Hoffines collided with him, causing Mr. Statham to sustain injuries. A claim for these injuries is currently pending against Peter Hoffines.

Frank Statham owned the aforesaid motorcycle and insured it through a separate policy of insurance which contained UIM limits of $15,000. Mr. Statham is making an underinsured motorist claim under the policy of insurance issued by Shelby.

---

1. All facts are taken from the parties' jointly submitted stipulation of facts.

2. Stacking in this context is defined as allowing the insured to combine or " 'stack' limits of each vehicle covered under insurance policy to pay for damages sustained in accident."

The UIM coverage under the Shelby policy was issued on one of Shelby's standard forms and reads in pertinent part.

A. We will pay compensatory damages which an 'insured' is legally entitled to recover from the owner or operator of an 'underinsured motor vehicle' because of 'bodily injury';

1. Sustained by an 'insured'; and

2. Caused by an accident

The owner's or operator's liability for these damages must arise out of the ownership, maintenance or use of the 'underinsured motor vehicle.'

The UIM coverage contains certain exclusions, in particular, providing that it does not provide UIM coverage for "bodily injury" sustained:

1. By you while 'occupying,' or when struck by, any motor vehicle you own which is not insured for this coverage under this policy. This includes a trailer of any type used with that vehicle.

Notwithstanding the above exclusion, commonly referred to as the "household exclusion," Defendants have made a claim for UIM benefits under the Shelby policy for injuries sustained as a result of the aforementioned accident.

## IV. Discussion

Plaintiff has moved for summary judgment claiming that under the terms of the policy Frank Statham's injuries are excluded from coverage and that this exclusion does not violate public policy. Defendants oppose the motion for summary judgment and make a cross-motion for

---

12 Couch on Ins. § 169.4 (3d ed.). Thus in an individual accident, under the terms of this policy, the Stathams would be able to double the individual limit as there are two vehicles on the policy.

summary judgment claiming that the terms of the policy are ambiguous and that the exclusion cannot be applied because it violates public policy. In the alternative, Defendants claim that this action is premature and request that it be stayed pending the resolution of the tort claim against Peter Hoffines and the UIM claim against the insurer of the motorcycle.

### A. Terms of the UIM Exclusion

"The interpretation of a contract of insurance is a matter of law for the courts to decide ... When the policy language is clear and unambiguous, we will give effect to the language of the contract." *Paylor v. Hartford Insurance Co.,* 536 Pa. 583, 586, 640 A.2d 1234, 1235 (1994), citing *Bateman v. Motorists Mutual Insurance Co.,* 527 Pa. 241, 245, 590 A.2d 281, 283 (1991), citing *Standard Venetian Blind Co. v. American Empire Insurance Co.,* 503 Pa. 300, 469 A.2d 563 (1983). "Where a provision of a policy is ambiguous, the policy provision is to be construed in favor of the insured and against the insurer, the drafter of the agreement." *Standard Venetian Blind Co.,* 503 Pa. at 305, 469 A.2d at 566.

Defendants claim that the language of the UIM coverage in the policy is ambiguous, thus mandating a construction of the terms in favor of the insured and against the insurer as per *Standard Venetian Blind Co., supra.* *See* Defendants Memorandum of Law in Support of Defendants Motion for Summary Judgment at 4–5. In support of this proposition, the defense simply copies a significant portion of the policy into its memorandum and makes the blanket assertion that the terms are ambiguous. *Id.* Defendants point to no particular provision that is ambiguous, nor do they supply any guidance as to what "construed in favor of the insured" should mean in this case.

We hold that the relevant portions of the policy are clear and unambiguous. Under the "household exclusion" at issue, Defendant Frank Statham sustained his "bodily injury" while occupying a "motor vehicle which [he owned] which [was] not insured for this coverage under this policy." Since the terms of this exclusion clearly indicate that Defendant's injuries are not covered under the policy and since the defense supplies no alternative interpretation, there can be no doubt that Defendants are not entitled to coverage under the Shelby UIM provisions unless this Court were to strike the household exclusion as violative of public policy.

### B. Public Policy

"Public policy is to be ascertained by reference to the laws and legal precedents and not from general considerations of supposed public interest." *Paylor,* 536 Pa. at 586–587, 640 A.2d at 1235, quoting *Guardian Life Insurance Co. v. Zerance,* 505 Pa. 345, 354, 479 A.2d 949, 954 (1984). A court may proclaim itself to be the voice of the public only when " 'a given policy is so obviously for or against the public health, safety, morals or welfare that there is a virtual unanimity of opinion in regard to it.' " *Id.,* quoting *Mamlin v. Genoe,* 340 Pa. 320, 325, 17 A.2d 407, 409 (1941).

The household exclusion at issue in this case has been the subject of litigation in both Pennsylvania Courts and the U.S. District Court for the Eastern District of Pennsylvania. Recently, our colleagues Judge J. Curtis Joyner and Judge Ronald L. Buckwalter of the Eastern District of Pennsylvania have ruled on the matter in cases virtually identical to the matter *sub judice.* *See, Nationwide Mutual Insurance Co. v. Ridder,* 105 F.Supp.2d 434 (E.D.Pa.2000) (Joyner, J.), *Liberty Mutual Insurance Co. v. Wark,* 2000 WL 1539083,

2000 U.S.Dist. LEXIS 15175 (E.D.Pa. October 19, 2000) (Buckwalter, J.)[3] In light of Pennsylvania Supreme Court precedent which our colleagues correctly applied, we hold that the household exclusion clause in the instant case is valid and enforceable.

In *Paylor v. Hartford Insurance Co., supra* the appellant's parents were killed in a single car crash while driving in a motor home that was insured under a policy issued by Foremost Insurance Company. At the time of the crash, the decedents also maintained insurance on three other vehicles under a separate policy with Hartford Insurance Company. After recovering the liability limits on the Foremost Policy, the estate attempted to recover UIM benefits under the Hartford policy. Hartford refused to pay, citing a household exclusion similar to the one in the instant case. The Pennsylvania Supreme Court held that the household exclusion was valid and did not violate public policy or the Motor Vehicle Financial Responsibility Law. 75 Pa.C.S. § 1701, *et. seq.* ("MVFRL"). *Id.,* 536 Pa. at 583, 640 A.2d at 1234.

The *Paylor* Court noted that the MVFRL was passed out of concern for the increasing costs of insurance, thus departing from the "maximum feasible restoration" principles of the revoked "No Fault Act." *Id.* 536 Pa. at 587, 640 A.2d at 1235. The Court placed emphasis on the fact that the decedents made a conscious decision to insure their motor home with a different company and for less coverage. To allow collection on the Hartford policy would enable the estate to convert inexpensive UIM coverage for the cars into liability insurance for the motor home. *Id.,* 536 Pa. at 597, 640 A.2d at 1241. While UIM coverage played an important role in the legislative plan of the MVFRL, "[u]nderinsured motorist insurance is purchased to protect oneself from other drivers whose liability insurance purchasing decisions are beyond one's control." *Id.,* 536 Pa. at 591, 640 A.2d at 1237–1238. In other words, UIM coverage prevents the insured from being penalized for another driver's poor choice of insurance coverage, not from the insured's own voluntary decision to carry less coverage or lower limits.

The Pennsylvania Supreme Court, just months later, had occasion to revisit the validity of the household exclusion clause in *Windrim v. Nationwide Insurance Co.,* 537 Pa. 129, 641 A.2d 1154 (1994). In *Windrim,* the appellant was driving his own uninsured vehicle when he was injured by the negligence of a hit-and-run driver. Appellant, who lived with his mother and thus qualified as an insured under her policy, attempted to collect under the uninsured motorist provisions of the mother's policy. However, the insurance company invoked a similar household exclusion which denied coverage to an insured injured while operating "a motor vehicle owned by you or a relative living in your household, but not insured for Uninsured or Underinsured Motorists coverage under this policy." *Id.* The Court upheld the exclusion, stating that it did not violate the policy of the MVFRL. On the con-

---

**3.** In *Ridder,* the insured was injured when his motorcycle was hit by an uninsured driver. The insurance on the motorcycle had uninsured motorist coverage of $15,000 which did not cover the full extent of the injuries. Mr. Ridder attempted to recover uninsured motorist coverage from two separate policies, both of which contained household exclusions. Relying on Pennsylvania Supreme Court precedent, Judge Joyner held that the exclusion was valid and enforceable. *Id.,* 105 F.Supp.2d at 434. In *Wark,* Judge Buckwalter, relying on the same Pennsylvania Supreme Court precedent and Judge Joyner's opinion in *Ridder,* upheld the validity of the household exclusion in a case identical to the case *sub judice. Id.,* 2000 WL 1539083, 2000 U.S.Dist. LEXIS 15175 at *1.

trary, the *Windrim* Court stated that the purpose of the MVFRL was to induce drivers to insure their cars and make obtaining insurance easier by controlling its ever-increasing costs. Invalidating the exclusion would actually discourage drivers like the appellant from obtaining insurance, because they could always look to the uninsured or underinsured motorist coverage of a family member. *Id.*, 537 Pa. at 134, 641 A.2d at 1157–1158.

In *Hart v. Nationwide Insurance Co.*, 541 Pa. 419, 663 A.2d 682 (1995), the Pennsylvania Supreme Court again considered the validity of the household exclusion. Relying on *Windrim*, the Court issued a *per curiam* opinion reversing the Superior Court and upholding the validity of the household exclusion. *Id.* In *Hart*, the appellant was injured when his vehicle was struck by an intoxicated driver. *Hart's* vehicle was insured, but he had elected to waive UIM coverage pursuant to 75 Pa. C.S. § 1731(c) (amended 1990). After collecting the $15,000 limit from the intoxicated driver's insurance policy, Hart attempted to collect under the UIM provisions of his daughter's insurance policy,[4] but was barred by the household exclusion. Thus the *Hart* court extended the *Windrim* holding to allow enforcement of the household exclusion even where the claimant had not failed to obtain insurance, but had simply chosen not to carry UIM coverage on the car involved in the accident. *Id.* 541 Pa. at 421, 663 A.2d at 682.

In *Eichelman v. Nationwide Insurance Co.*, 551 Pa. 558, 711 A.2d 1006 (1998), the Pennsylvania Supreme Court yet again upheld the validity of the household exclusion, this time in a factual situation remarkably similar to the case *sub judice*. In *Eichelman*, the appellant was driving his motorcycle when he was negligently struck by a pick-up truck. *Id.*, 551 Pa. at

560–561, 711 A.2d at 1007. Under the insurance policy covering the motorcycle, appellant had waived UIM coverage pursuant to 75 Pa.C.S. § 1731(c). *Id.* After recovering the full liability amount from the truck driver's policy, appellant sought to collect UIM benefits from an insurance policy issued to his parents. Unfortunately for Mr. Eichelman, his parents' UIM provisions contained a household exclusion which barred his recovery. *Id.*

The *Eichelman* Court noted that appellant had voluntarily chosen not to purchase UIM coverage on his motorcycle, and for this he received a lower premium. *Id.*, 551 Pa. at 566, 711 A.2d at 1009. Upholding the exclusion would further the policy behind the MVFRL because it would hold insured drivers to their voluntary choices and because it would help keep the cost of insurance down. *Id.*, 551 Pa. at 566–567, 711 A.2d at 1009–1010. Invalidating this exclusion would allow one family member to purchase UIM coverage on one vehicle and thereby obtain coverage on an unlimited number of vehicles for the entire family. *Id.* As the Court stated:

> Therefore, the Court concludes that a person who has voluntarily elected not to carry underinsured motorist coverage on his vehicle is not entitled to recover underinsured motorists benefits from separate insurance policies issued to family members with whom he resides where clear and unambiguous 'household exclusion' language explicitly precludes underinsured motorist coverage for bodily injury suffered while occupying a motor vehicle not insured for underinsured motorist coverage. *Id.*

In light of the Pennsylvania Supreme Court's decisions in *Paylor*, *Windrim*, *Hart*, and *Eichelman*, there can be no doubt that the household exclusion in the

---

4. Hart qualified as an "insured" under the     daughter's policy because she lived with him.

instant case is valid and enforceable. Defendants voluntarily chose to insure the motorcycle through a separate policy for a lower UIM limit than their other vehicles, and for this they paid a lower premium. To invalidate the household exclusion would be to allow drivers to choose and pay for lower coverage but still to receive higher benefits because of an entirely separate policy which specifically prohibits this type of manipulation.

■ Defendants do correctly point out that the *Paylor* Court did not make a blanket holding that the household exclusion was always enforceable, but rather that "[t]he enforcement of the exclusion is dependent upon the factual circumstances presented in each case." *Paylor*, 536 Pa. at 595, 640 A.2d at 1240. Thus, in *Burstein v. Prudential Property and Casualty Insurance Co.*, 742 A.2d 684 (Pa.Super.1999), *alloc. granted, stay granted*, 563 Pa. 670, 759 A.2d 919 (2000), the Pennsylvania Superior Court did find a factual situation where enforcement of the household exclusion would violate public policy. However, the facts of that case are easily distinguished from the case at hand. In *Burstein*, appellees were driving in a car made available to Mrs. Burstein by her employer when they were struck by a negligent motorcyclist. *Id.*, 742 A.2d at 685. The employer insured the car, but had waived UIM coverage. *Id.* After recovering the limits of the motorcyclist's liability insurance, the Bursteins attempted to collect UIM benefits from a separate policy they had obtained from Prudential on three other motor vehicles. *Id.* Prudential denied the benefits based on an exclusion for a " 'regularly used non-owned car' not insured under this policy." *Id.* The Court declined to extend the *Paylor* line of cases and held that the exclusion violated the MVFRL. Important to the Court was the fact that the Bursteins had no choice in

declining UIM coverage on the employer's vehicle and that they clearly had no means of obtaining UIM coverage on the vehicle. *Id.*, 742 A.2d at 686. That is clearly not the case in the instant matter. Unlike the Bursteins, the Stathams had every opportunity to insure the motorcycle for a higher amount, but they voluntarily chose to take the lower limit. As stated above, the Pennsylvania Supreme Court in *Paylor* determined that the purpose of UIM coverage is to "protect oneself from other drivers whose liability insurance purchasing decisions are beyond one's control." *Id.*, 536 Pa. at 591, 640 A.2d at 1237–1238. In *Burstein*, the insured had no means to protect themselves from the other driver's decision to carry inadequate insurance because the coverage on the vehicle was solely determined by the employer, whereas here, the Defendants did have such an opportunity but chose to insure their motorcycle with UIM limits of only $15,000.

Similarly, in *Kmonk–Sullivan v. State Farm Mutual Auto. Insurance Co.*, 746 A.2d 1118 (Pa.Super.1999), *alloc. granted*, 771 A.2d 1285 (2001) the Superior Court invalidated a "government vehicle exclusion" as impermissibly conflicting with public policy and the MVFRL. The case arose out of an accident between two buses operated by the Port Authority of Allegheny County, a Commonwealth agency, causing injuries to approximately 50 passengers. Under the Political Subdivision Tort Claims Act, 42 Pa.C.S. §§ 8521–28 (1998), the Port Authority's liability was limited to $250,000 per person and $1,000,000 per accident. *Id.* 746 A.2d at 119. Passengers who had UIM coverage under policies on other vehicles attempted to recover to make up for the deficiencies. *Id.* The insurance providers refused payment based on provisions in the policies which excluded any vehicle owned by a governmental unit or agency from the definition of "underinsured motor vehicle." *Id.* The

Court invalidated the exclusion as violating the policy of the MVFRL which it stated was to provide for a liberal compensatory scheme. *Id.* Again, *Kmonk* is easily distinguished from the case at hand. First, unlike the instant case, the passengers on the bus obviously had no control over the coverage on the vehicle in which they were injured. Also, the government-owned vehicle exclusion is fundamentally different from the household exclusion in that it excludes from coverage injuries caused by an entire class of vehicles on the public roads, whereas the household exclusion merely prohibits the insured from receiving UIM benefits on other vehicles that they own or operate but which are not covered under the specific policies.[5]

While Defendants have pointed to Pennsylvania Superior Court precedent which has invalidated UIM exclusions in some situations, all of those cases are clearly distinguished from the case at bar.[6] Thus, we hold that the household exclusion at issue is valid and enforceable. Under Pennsylvania Supreme Court precedent the household exclusion does not violate public policy or the MVFLR.

### C. Actual Controversy

After holding that the Defendants are not entitled to UIM benefits from the Shelby policy, we must turn to Defendants' claim that this action is premature. By requesting that Plaintiff's action be stayed until the resolution of the tort suit and claim against the insurer of the motorcycle, Defendants are in effect saying that there is, as yet, no actual controversy between the two parties. In a declaratory judgment action "[f]or there to be actual controversy the defendant must be so situated that the parties have adverse legal interests." *Pic–A–State Pa. Inc. v. Reno,* 76 F.3d 1294, 1298 (3d Cir.), *cert. denied,* 517 U.S. 1246, 116 S.Ct. 2504, 135 L.Ed.2d 194 (1996), quoting, *Step–Saver Data Systems Inc. v. Wyse Technology,* 912 F.2d 643, 648 (3d Cir.1990), quoting 10A Charles A. Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 2757, at 582–83 (2d Ed.1983). Initially, it must be noted that it is the Defendants who have made a claim for benefits under the Shelby policy, thus creating a dispute as to the legal relationship between the parties. *See* Stipulation of Facts at ¶ 9. Clearly, the fact that one party seeks to be paid under an insurance contract and another claims that it is under no obligation to do so creates "adverse legal interests." *See, e.g., Provident Tradesmens Bank & Trust Co. v. Patterson,* 390 U.S. 102, 88 S.Ct. 733, 19 L.Ed.2d 936 (1968) (holding that court should have

---

**5.** *See also, Prudential Property & Casualty Ins. Co. v. Gisler,* 764 A.2d 1111 (Pa.Super.2000) (holding that "regularly used non-owned car" exclusion was invalid as applied to police officer injured in patrol car who sought UIM benefits under policy covering personal vehicle).

**6.** Defendants point to only one recent case that has held a household exclusion to be invalid in a case such as the one *sub judice.* In *Nationwide Mutual Insurance Co. v. Catalfu,* 47 Pa.D. & C. 4th 282 (Ct.Com.Pl., Erie Co.2000), the Court of Common Pleas, Erie County invalidated a household exclusion citing the public policy of providing compensa-

tion to accident victims and because the Plaintiff "had no control over the amount of coverage secured by the tortfeasor." *Id.,* 47 Pa.D. & C. 4th at 288. Insofar as the *Catalfu* court is in conflict with the Pennsylvania Supreme Court, it is our duty, as a federal court applying State law, to follow the precedent of the Commonwealth's highest court. After all, "[t]he State's highest court is the best authority on its own law." *McKenna v. Ortho Pharmaceutical Corp.,* 622 F.2d 657, 661 (3d Cir.), *cert. denied,* 449 U.S. 976, 101 S.Ct. 387, 66 L.Ed.2d 237 (1980), quoting *Commissioner v. Estate of Bosch,* 387 U.S. 456, 87 S.Ct. 1776, 18 L.Ed.2d 886 (1967).

granted declaratory judgment on whether driver was using car with permission and whether driver was within scope of coverage, since issue could not be decided in state tort case against driver), cited in 10A Wright, Miller, & Kane, Federal Practice and Procedure § 2760, n. 4 (3d ed.1998). Since there is a genuine dispute about the legal relationship between the parties and since none of the issues involved in this declaratory judgment action will be or need to be decided in the tort suit or claim against the insurer of the motorcycle, we hold that there is an actual controversy and that the action is not premature.

## V. Conclusion

The household exclusion in the UIM provision of the insurance contract between Plaintiff and Defendants bars recovery for injuries sustained by Plaintiff Frank Statham as a result of his motorcycle accident. Furthermore, this exclusion is valid and it violates neither Pennsylvania public policy nor the MVFRL. Finally this declaratory judgment action is not premature and presents an actual controversy about the legal relationship between the two parties.

An appropriate order follows.

### ORDER

AND NOW, this 24th day of August, 2001, consistent with the foregoing opinion it is hereby ORDERED as follows:

1. Plaintiff Shelby Casualty Insurance Company's Motion for Summary Judgment, filed July 19, 2001, is GRANTED;

2. JUDGMENT IS ENTERED in favor of Plaintiff Shelby Casualty Insurance Company and against the Defendants Frank Statham and Alma Statham.;

3. The Court finds, determines, and holds that the Plaintiff Shelby Casualty Insurance Company is under no legal obligation to provide underinsured motorist coverage to the Defendants Frank Statham and Alma Statham for the motor vehicle accident of May 30, 2000;

4. Defendants Frank Statham and Alma Statham's Motion for Summary Judgment, filed July 27, 2001, is DENIED. We also deem the argument in Defendants' Memorandum of Law, filed on July 27, 2001, that this action is premature to be a motion for a stay which is DENIED;

5. This case is CLOSED.